**Peggy BURTON, Plaintiff,**

v.

**CASCADE SCHOOL DISTRICT UNION HIGH SCHOOL NO. 5 et al.,**
**Defendants.**

**Civ. No. 72–334.**

United States District Court,
D. Oregon.

Jan. 18, 1973.

Jere M. Webb, Charles F. Hinkle, ACLU of Oregon, Inc., Portland, Or., Clemens E. Ady, Salem, Or., for plaintiff.

Robert W. DeArmond, Salem, Or., for defendants.

OPINION

SOLOMON, District Judge:

Plaintiff was dismissed from her teaching position at Cascade High School because she is a homosexual. She seeks relief under 42 U.S.C. § 1983. The case is before me on her motion for summary judgment.

Plaintiff began to teach in the Cascade High School on July 1, 1970. She was a full-time teacher during the 1970–1971 school year. In October, 1971, after she commenced her second year of teaching, the principal of the High School learned that plaintiff was a homosexual from the mother of a student. There is no allegation that plaintiff was derelict in her teaching duties or that she made any homosexual advances toward any student. After she acknowledged that she was a "practicing homosexual," the Cascade School Board terminated her teaching contract pursuant to ORS 342.530(1)(b), which provides:

> *Dismissal of teachers.* (1) During the period of the contract . . . the district school board shall dismiss teachers only for:
>
> .  .  .  .  .  .  .

(b) Immorality;

.  .  .  .  .  .  .

I find this statute unconstitutionally vague. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); Cramp v. Bd. of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961).

This statute vests in the school board the power to dismiss teachers for immorality. However, the statute does not define immorality. Immorality means different things to different people, and its definition depends on the idiosyncracies of the individual school board members. It may be applied so broadly that every teacher in the state could be subject to discipline. The potential for arbitrary and discriminatory enforcement is inherent in such a statute. *See* United States v. Reese, 92 U.S. 214, 23 L.Ed. 563 (1875). ("It would certainly be dangerous if the legislature could set a net large enough to catch all offenders, and leave it to the courts to step inside and say who would be rightfully detained and who should be set at large." *Id.* at 221, 23 L.Ed. 563.)

A statute so broad makes those charged with its enforcement the arbiters of morality for the entire community. In doing so, it subjects the livelihood of every teacher in the state to the irrationality and irregularity of such judgments. The statute is vague because it fails to give fair warning of what conduct is prohibited and because it permits erratic and prejudiced exercises of authority.[1] *See* Amsterdam, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa. L.Rev. 67 (1960). No amount of statutory construction can overcome the deficiencies of this statute.

Counsel are directed to meet within the next 14 days and agree, if they can, on an appropriate remedy. If counsel fail to agree on a remedy, the Court will hold a hearing to resolve this issue.

---

1. ORS 342.530(1)(b) also presents serious constitutional problems because it does not require a nexus between conduct and teaching performance. Mindel v. United States Civil Service Commission, 312 F Supp. 485 (N.D.Cal.1970).