Argued and submitted May 8, 1981, affirmed March 8,
reconsideration denied April 27,
petition for review allowed June 9, 1982 (293 Or 235)

ROSS,
*Petitioner,*

*v.*

SPRINGFIELD SCHOOL DISTRICT NO. 19,
*Respondent.*

(No. FD 80-1, CA 19038)

641 P2d 600

Robert D. Durham, Eugene, argued the cause for petitioner. With him on the brief were Jennifer Friesen, and Kulongoski, Heid, Durham & Drummonds, Eugene.

John C. Volmert, Springfield, argued the cause for respondent. With him on the brief were Merwin C. Logan, and Wurtz, Logan & Logan, Springfield.

Edward C. Harms, Jr. and Harms, Harold & Leahy, Springfield, filed the brief amicus curiae for Oregon School Boards Association.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner seeks judicial review of the order of the Fair Dismissal Appeals Board (FDAB) affirming his dismissal as a permanent teacher by the respondent school district on the grounds of "immorality" and "gross unfitness." ORS 342.865(1)(b) and (i).[1] We affirm.

Petitioner was employed for 19 years as a permanent teacher by respondent school district. Since 1977, he was assigned as an elementary school librarian for grades one through six at Camp Creek Elementary school and Mohawk Elementary school. Both schools are located in small, rural communities approximately ten miles from Springfield. Petitioner's job included formal instruction in six 30-minute library classes per week at Mohawk Elementary school and in two such classes per week at Camp Creek Elementary school.

In January, 1979, the Adult World bookstore, located near downtown Eugene, was under police investigation as a possible "nuisance." The bookstore sold sexually explicit materials and operated a movie arcade. The arcade

---

[1] ORS 342.865(1) provides, in pertinent part:

"(1) No permanent teacher shall be dismissed except for:

"* * * * *

"(b) Immorality;

"* * * * *

"(i) Any cause which constitutes grounds for the revocation of such permanent teacher's teaching certificate; * * *

"* * * * *."

Grounds for revocation of a teaching certificate are provided in ORS 342.175(1), which states:

"(1) Action to suspend or revoke any certificate or to discipline a teacher or administrator may be initiated by the Teacher Standards and Practices Commission, created under ORS 342.350 upon complaint charging the teacher or administrator with:

"(a) Conviction of a crime not listed in subsection (2) of this section;

"(b) Gross neglect of duty;

"(c) *Any gross unfitness;* or

"(d) Having been convicted of violating any law of this or any state or of the United States involving the illegal use, sale or possession of controlled substances." (Emphasis supplied.)

consisted of 24 individual booths separated by plywood walls approximately seven feet high and open at the top and bottom. Twenty booths had locking wooden doors; the remaining four booths did not.

During the police investigation, petitioner was observed entering one of the movie booths, which was occupied by another person, and closing the door behind him. One officer, by standing on the shoulders of another officer, was able to observe petitioner watching a movie and engaging in anal intercourse with the other person.

Subsequently, based on that and other evidence not involving petitioner, the Lane County District Attorney filed suit to enjoin the continued operation of the Adult World. One of the allegations of the complaint described the incident involving petitioner, naming him. Attached to and made a part of the complaint was an affidavit of the police officer who observed petitioner in the Adult World; it set forth, in more graphic form, the activities he had observed in the store, including those of petitioner summarized above.

Petitioner was one of approximately 30 to 40 persons subpoenaed as witnesses in that lawsuit. At the hearing held on the state's motion for a preliminary injunction against Adult World, petitioner's name was called in court as a witness, but he was not actually called to testify; however, the officer's affidavit describing petitioner's activities was put in evidence. On June 14, 1979, the circuit court entered a decree enjoining the operation of the Adult World bookstore.

In order to comply with the subpoena, petitioner requested respondent's principal, John Halgren, to grant him a leave of absence. At that time, petitioner informed Mr. Halgren that he had been subpoenaed as a witness in the Adult World case. That information was related to respondent's personnel director, Curt Huey.

Newspaper coverage surrounding the Adult World suit was extensive; although petitioner's name was never mentioned in any of the articles, word of his involvement in the suit spread quickly throughout the communities where he taught. The news articles indicated that the activities at

Adult World included acts of oral and anal sodomy, masturbation and use of "glory holes," and that semen and urine were present on the floor and walls.

On February 2, 1979, petitioner received a letter from respondent's superintendent, William Lewellen, informing him that he would be reassigned to the Educational Media Center, a position which did not involve student contact, because of the "controversy surrounding a suit to enjoin a nuisance in which you have been named in the complaint * * *." On March 27, 1979, Superintendent Lewellen filed a complaint with the Teacher Standards and Practices Commission seeking to revoke petitioner's teaching certificate for "gross unfitness," ORS 342.175(1)(c), on the basis of the information contained in the City's nuisance complaint. After investigation, the Commission dismissed the complaint for lack of probable cause.

Petitioner was reassigned to his library post on June 4, 1979, but the school library was closed the last few weeks of school, so no formal library classes were conducted by him during that period. Mr. Halgren testified that on the evening of petitioner's return to his library position, he (Halgren) received numerous telephone calls from concerned parents, and subsequently received letters from parents requesting that petitioner be removed from his position.

On June 12, 1979, petitioner met with Mr. Halgren and was advised of the complaints and the school district's complaint procedure. Mr. Halgren subsequently notified petitioner of his right to meet, either individually or in a group, with the complaining parents in an attempt to resolve the conflict. Petitioner declined twice to meet with the parents.

On August 28, 1979, petitioner was again reassigned to the Educational Media Center. On December 14, 1979, Superintendent Lewellen, pursuant to ORS 342.895, notified petitioner that he intended to recommend petitioner's dismissal as a permanent teacher to the Board of Directors on the grounds of "inefficiency," "immorality" and "gross unfitness." ORS 342.865(1)(a), (b) and (i). That notice set forth the following facts relied upon:

"(1) Your conduct has become the subject of public notoriety so as to impair your capability to perform your duties.

"(a)   On January 11, 1979, you were observed by Officer James R. Hill, Eugene Police Department, at the Adult World Book Store engaged in homosexual activities. A copy of his Affidavit is attached hereto and incorporated herein and marked Exhibit 'A.'

"(b)   As a result of this incident and the Eugene Police Department's follow-up investigation, you were named in a Complaint filed in Lane County Circuit Court seeking to close the Adult World Book Store. A copy of said Complaint is attached hereto, marked Exhibit 'B' and by reference incorporated herein.

"(c)   Subsequently, according to your own statements to Officer Hill and Dennis Williams, another officer of the Eugene Police Department, you have, on various occasions, engaged in a variety of homosexual acts at the Adult World Book Store.

"(d)   The homosexual activities you engaged in took place on several occasions at the Adult World Book Store in Eugene, Lane County, Oregon, a store open to members of the public over 18 years of age.

"(e)   As a result of this incident and your life style, parents have stated in writing that they will not permit their children to have contact with you as a teacher.

"(f)   Parents have also stated in writing that they will withdraw their children from school if you return to the school as a teacher.

"(g)   Parents have requested in writing that you be terminated.

"(h)   Copies of the parents' correspondence to the District are attached hereto, marked Exhibit 'C' and by reference incorporated herein as though fully set forth.

"(2)   It is my opinion that your past conduct has made it impossible for you to provide leadership and direction for others by appropriate example; nor in my opinion will you be able to promote the teaching and practicing of high moral standards in the schools of the District. It is further my opinion that you will no longer be able to function efficiently with students, parents or other teachers in Springfield School District #19."

On January 14, 1980, the school board dismissed petitioner on the above-stated grounds. Petitioner appealed to the FDAB, ORS 342.905(1), which, after a hearing, issued a final order affirming petitioner's dismissal on the grounds of "immorality" and "gross unfitness"; it dismissed the charge of "inefficiency."

The function of the FDAB on "appeal" is limited. As we pointed out in *Lincoln County School Dist. v. Mayer,* 39 Or App 99, 591 P2d 755 (1978), *rev den* 287 Or 215 (1979), that Board does not review for substantial evidence a prior record made before the school board; rather, it is the primary factfinder. The relevant statute, ORS 342.905, was amended after our *Mayer* decision; subsection (5) of that section now provides:

"(5) When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written report and send it to the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in subsection (1) of ORS 342.865, are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. The panel shall not reverse the dismissal if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy. * * *"

■ The amended statute makes clearer than did the statute in effect at the time of *Mayer* that the FDAB may not substitute its judgment for that of the school board if the facts relied on and found to be true, together with any additional facts developed at the hearing, are adequate to satisfy the statutory grounds on which the school board relied. In making that determination, the Board must consider all "reasonable written rules, policies and standards of performance" adopted by the school board. It may not reverse the dismissal

"* * * if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its

findings and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy. \* \* \*'' ORS 342.905(5).

The FDAB did what the law requires. It specifically found that the facts on which the school district relied, as set forth in the December 14, 1979 notice (quoted above), are true and substantiated, and that those facts supported the charges of immorality and gross unfitness, but not the charge of inefficiency. Petitioner, however, relying on *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), contends that the Board's order is not sufficiently clear to permit judicial review. In support of that contention, it argues that because the terms "immorality" and "gross unfitness" are not defined in the Fair Dismissal Law, ORS 342.805 to 342.955, the FDAB is required to define those terms in its final order.

■ That contention assumes that it is up to the FDAB to determine what is immoral or what constitutes gross unfitness. As we read the statutory scheme, it is not. ORS 342.895 vests in the district school board the authority to dismiss a permanent teacher on the grounds set forth in ORS 342.865. In leaving the grounds for dismissal undefined, the legislature must have intended that the standards be applied at the local level based upon local standards. What may be "inadequate performance," ORS 342.865(1)(g), in one school district may be adequate in another. So, too, "immorality" and "gross unfitness"[2]: what is acceptable in one district may not be in another.

■ That delegative authority does not, however, leave the local board with unfettered discretion. FDAB review protects the teacher against arbitrary action, even though its authority is limited to determining whether the facts relied upon by the local school board are "true and substantiated," and, if so, whether such facts justify the conclusion reached by the school board. In other words, the FDAB determines whether the local school board could reasonably

---

[2] "Gross unfitness" does not expressly appear in ORS 342.865 as a ground for dismissal, but is included within subsection (1)(i), which refers to any cause which would be grounds for revocation of the permanent teacher's teaching certificate. Those grounds are set forth in ORS 342.175(1)(c). *See* n 1, *supra.* That section does not define that term, and the Teacher Standards and Practices Commission has not defined it.

conclude that those facts constituted immorality or gross unfitness. It is not the function of the FDAB to decide whether it would have reached the same conclusion based upon that evidence. We conclude that the FDAB's order is sufficiently complete and clear[3] to permit judicial review.

■    Petitioner also contends that the order of the FDAB is not supported by substantial evidence in the record, notwithstanding that the underlying facts giving rise to his termination are not in dispute. There are, it is true, some nuances which petitioner reads into the Board's order, and then takes issue with them. The FDAB, after giving a general factual recitation, expressly found that the facts relied upon by the school district as set forth in the December 14, 1979, notice are true and substantiated and support the charges of immorality and gross unfitness. Petitioner points to some other statements made in the FDAB order which, he claims, require remand. They include the statements that petitioner's conduct was "illegal" and that his conduct occurred in a "public place." Both of those points were raised in petitioner's petition for rehearing and reconsideration before the FDAB. It is clear from the Board's order denying the petition that it did not consider it significant whether petitioner's conduct was illegal.[4] As to the contention that petitioner's conduct did not occur in a "public place," it is clear that the FDAB used that phrase in the same manner as did the superinten-

---

[3] We note that the FDAB is more amorphous than most administrative boards. It is composed of 20 persons appointed by the governor, of whom five are permanent teachers, five are school administrators, five are school board members and five are selected from the general public. ORS 342.930(1). Stated generally, on a given appeal, the Superintendent of Public Instruction selects a panel of three FDAB members, each of whom is from a different one of the described groups, ORS 342.905(3), to conduct a contested case hearing. ORS 342.905(4) and (5). Its rulemaking authority is limited to procedures at its hearings; it has no apparent authority to issue interpretive rules relating to the grounds for dismissal enunciated in ORS 342.865(1). It does not, therefore, appear to be the kind of board intended to use its expertise in completing value judgments relating to delegative terms used by the legislature. *See McPherson v. Employment Division*, 285 Or 541, 550, 591 P2d 1381 (1979). As we have indicated, we conclude that the value judgments here were intended to be made by the local school boards based upon local standards.

[4] It is not clear whether petitioner's conduct constituted a crime. We agree with the board that question is irrelevant here. However, there is no evidence that the sexual activity was other than between competent, consenting adults. *See* ORS 163.305(1).

dent's December 14 notice to petitioner that his activities "took place on several occasions at the Adult World Book Store in Eugene, Lane County, Oregon, a store open to members of the public over 18 years of age."

Petitioner makes much of the fact that the FDAB order, as he reads it, incorrectly summarized some of the testimony and other evidence to make it appear that all of the parents knew all of the details of petitioner's involvement with the Adult World Book Store. The order does not say that, the December 14 notice to petitioner did not say that, and it is not a fact necessary to support the decision of the school board or the FDAB order. It is clear that the superintendent knew the details, as did the members of the school board. It is also clear that numerous parents had general information that petitioner was involved in the Adult World Book Store injunction proceeding and were very upset over his continued employment as a teacher in the school district.

■ Petitioner also takes issue with the FDAB's discussion of the school district's policies, or philosophy, and its findings with respect to them. The FDAB considered certain standards of performance and philosophies adopted by the school district. ORS 342.905(5) requires that the FDAB do so. The school district's adopted philosophy includes the following propositions:

"Select and develop teaching and non-teaching personnel who consistently demonstrate a sincere interest, not only in the community, the district and the school, but more importantly in the individual student, and who exhibit respect for that responsibility.

"Remain in constant and open communication with all segments of the school community, remembering that sound public relations are important to the success of any educational program.

"A relationship between staff and students should be established and maintained at such a level as will allow a high degree of cooperation and inspire mutual confidence to the end that maximum achievement may result from a combination of the teaching skills and learning skills of the two groups."

The FDAB concluded that petitioner's conduct was "diametrically in opposition to the school district implementing * * * [that] philosophy," based on the following findings of ultimate facts:

"(1) Ross carried on sexual *[sic]* deviate acts at the Adult World Bookstore which became known in the communities where he taught school.

"(2) Ross could not have an effective relationship with students or parents due to his Adult World bookstore activities.

"(3) Ross would have a doubtful *[sic]* effective relationship with teachers in the future due to his Adult World bookstore activities.

"* * * * *."

In discussing those findings, the Board stated:

"The known conduct of Ross makes it difficult if not virtually impossible to 'inspire mutual confidence' between teacher and student.

"Ross voluntarily chose his lifestyle. He practiced his lifestyle in the general community where he taught. His lifestyle included acts of deviate sexual intercourse in a public place. Ross knew or should have known that his lifestyle would not be acceptable to the parents and school district. He knew or should have known that upon discovery of his lifestyle and the notoriety given to such a lifestyle, he would be ineffective as a teacher, thus rendering him grossly unfit to teach."

Because the statute, as amended in 1979, requires the FDAB to consider such matters, we cannot fault the Board for doing so. Its findings in connection with the school district's philosophy and standards are supported by substantial evidence, including reasonable inferences drawn therefrom.

■ ■ For the first time on appeal, petitioner contends that the evidence of his "alleged sexual misconduct" was produced through an unconstitutional search. Because the evidence was not objected to before the Board, it was properly admitted under the Board's rules. OAR 586-30-030.[5] Even assuming that the evidence was improperly obtained, the exclusionary rule does not apply to a civil proceeding. *See United States v. Janis*, 428 US 433, 96 S Ct

---

[5] OAR 586-30-030(3) provides:

"(3) All offered evidence, not objected to, will be received by the presiding officer subject to his power to exclude irrelevant, immaterial, or unduly repetitious matter."

3021, 49 L Ed 2d 1046 (1976), *State Forester v. Umpqua River Nav.,* 258 Or 10, 26, 478 P2d 631 (1970), *cert denied* 404 US 826 (1971).

■ ■    Finally, petitioner raises a panoply of constitutional issues. First, he argues that the FDAB order deprives him of due process of law under the Fourteenth Amendment to the United States Constitution, because the standards of "immorality" and "gross unfitness" are too vague to give adequate warning to teachers as to what conduct is prohibited. A similar due process argument was raised and rejected by the Supreme Court in *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980).[6] The court in *Megdal,* reviewing the revocation of a dentist's license for "unprofessional conduct," concluded:

> "* * * [The void for vagueness] principle, like that against *ex post facto* laws, is generally confined to penal sanctions. No one familiar with the common law expects due process to preserve one either from indefinite standards or from their delegation to juries or judges in civil cases, though one may stand to lose far more than under many criminal laws. * * *" 288 Or at 299.

---

[6] Petitioner relies on *Burton v. Cascade School District Union High School No. 5,* 353 F Supp 254 (D Or 1973), *affirmed* 512 F2d 850 (9th Cir 1975), where it was held that former ORS 342.530(1)(b), which provided for the dismissal of a teacher on the grounds of "immorality," was unconstitutionally vague. In *Burton,* a nontenured teacher was dismissed for her admitted homosexuality; the district court ordered relief in the form of monetary damages for her wrongful termination but refused to order her reinstatement. On appeal to the Ninth Circuit, 512 F2d 850 (1975), the only question before the court was whether the District Judge erred in refusing to order the teacher's reinstatement. The Ninth Circuit affirmed.

We are not bound by the district court decision in *Burton,* but are bound to follow the Oregon Supreme Court decisions: civil statutes are not subject to the "void for vagueness" attack. *Megdal v. Board of Dental Examiners, supra,* 288 Or at 299; *see Marquam Investment Corporation v. Beers,* 47 Or App 711, 714, 615 P2d 1064, *rev den* 290 Or 249 (1980).

We also note in passing that the employment contract between the parties provided:

> "The personal life of a teacher is not an appropriate concern or attention of the Board. *It is recognized, however, that conduct of a teacher outside the school and/or the context of assigned duties may be sufficiently related to the teacher's influence and on the teacher's effectiveness in performance of his or her duties as to remove the conduct from the teacher's 'personal life.'* " (Emphasis supplied.)

That provision, coupled with respondent's adopted written policies, was adequate warning to petitioner that the notoriety resulting from the discovery of his activities at the Adult World would adversely affect his employment.

Next, petitioner contends that his dismissal violates his right to privacy and equal protection under the state and federal constitutions. Petitioner's conduct, however, is not of the character afforded constitutional protection, *see Doe v. Commonwealth's Atty. for City of Richmond,* 403 F Supp 1199 (ED Va 1975), and we conclude that the grounds for petitioner's dismissal were rationally related to his ability to teach effectively in the school district. Petitioner was not dismissed because of his sexual preference, but rather because of the manner and place in which he exercised that preference with the resultant notoriety surrounding his activities at the Adult World, which the school board was entitled to determine impaired his ability to teach in the district.[7] If petitioner's privacy was invaded at all, it was the result of his indiscretion in failing to protect his privacy.

We do not decide whether petitioner's conduct was "immoral" or rendered him "grossly unfit" to teach. That is not our function. Rather, we decide only that petitioner's dismissal on either or both grounds was within the authority delegated by the legislature to the local school boards and that the FDAB order is supported by substantial evidence in the record and is not wrong in substance. ORS 183.484(4); *Springfield Education Assn. v. School Dist.,* supra.

Affirmed.

---

[7] In its final order, the FDAB stated:

"Ross was involved in acts of deviate sexual intercourse in a public place. He is not charged with being a homosexual. He is charged with immorality. The admitted acts of Ross at Adult World were acts of deviate sexual intercourse.

"* * * Ross was dismissed because of behavior, not because of homosexual traits or impulses. * * *"