Argued and submitted September 28, 1981, affirmed April 12, 1982

# KEENE,
*Petitioner,*
*v.*
# CRESWELL SCHOOL DISTRICT
# NO. 40 et al,
*Respondents.*

## (CA A21003)

643 P2d 407

Henry H. Drummonds, Eugene, argued the cause for petitioner. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Joe B. Richards, Eugene, argued the cause for respondent Creswell School District No. 40. With him on the brief was Luvaas, Cobb, Richards & Fraser, Eugene.

Jan P. Londahl, Assistant Attorney General, Salem, waived appearance for respondent Fair Dismissal Appeals Board.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

Warren, J., dissenting.

## BUTTLER, P. J.

Petitioner seeks judicial review of an order of the Fair Dismissal Appeals Board (FDAB) which affirmed the respondent school district's termination of his employment on the grounds of insubordination and neglect of duty. ORS 342.865(1) (amended by Or Laws 1981, ch 569, § 1).[1]

Petitioner was a permanent teacher employed by respondent.[2] He requested and was granted a one-year leave of absence for the 1979-80 school year. In March, 1980, petitioner applied for an extension of his leave of absence for the 1980-81 school year. Respondent's superintendent advised petitioner by letter that he would recommend that no action be taken on petitioner's request. Based on that recommendation, respondent denied the request at a special meeting of its board on April 23. Petitioner was notified of the denial on April 25.

---

[1] ORS 342.865(1) provided:

"(1) No permanent teacher shall be dismissed except for:

"(a) Inefficiency;

"(b) Immorality;

"(c) Insubordination;

"(d) Neglect of duty;

"(e) Physical or mental incapacity;

"(f) Conviction of a felony or of a crime involving moral turpitude;

"(g) Inadequate performance;

"(h) Failure to comply with such reasonable requirements as the board may prescribe to show normal improvement and evidence of professional training and growth;

"(i) Any cause which constitutes grounds for the revocation of such permanent teacher's teaching certificate; or

"(j) Reduction in permanent teacher staff resulting from the district's inability to levy a tax sufficient to provide funds to continue its educational program at its anticipated level or resulting from the district's elimination of classes due to decreased student enrollment or reduction of courses due to administrative decision. School districts shall make every effort to transfer teachers of courses scheduled for discontinuation to other positions for which they are qualified. Merit and seniority shall be considered in determination of a teacher for such transfer."

[2] Although the FDAB is a named respondent, wherever we use the word respondent we refer to the school district.

Petitioner then asked that respondent reconsider his request. On May 12, the superintendent wrote petitioner a letter, enclosing a copy of the superintendent's briefing to the school board relating to petitioner's request. That briefing concluded:

"It will be my recommendation to the board that Mr. Keene let the district know if he will be returning by May 16, 1980, for the 1980-81 school year. In order to be able to make the necessary education plans for next year, should no word be received by May 16, 1980, I recommend the district initiate steps to terminate Mr. Keene."

Petitioner appeared at the board meeting on May 14 in support of his request for reconsideration of the one-year extension. However, he left that meeting before the board reached its decision. The following day the superintendent sent petitioner a certified letter advising him that his request for reconsideration had been denied and requesting petitioner to indicate by May 19 his intention to return. That letter was not received by him until May 27. He made no response, but did come in to the respondent's office to pick up copies of materials from his personnel file. He did not at that time discuss his intentions with anyone on the administrative staff.

On May 15, the superintendent also sent petitioner a telegram, which was not delivered because of an error on the part of Western Union. Not having heard from petitioner, the superintendent attempted to contact him by telephone on May 19 and 20, but was unsuccessful. On May 20, the superintendent sent petitioner another telegram, which was received that day by petitioner's wife. The telegram requested petitioner to advise respondent by May 22 of his intentions.

On June 24, having received no response from petitioner, the superintendent sent him another letter advising him that his failure to respond "is taken as a decision not to return to the District." The letter went on to state that respondent would proceed to dismiss petitioner in accordance with the Fair Dismissal Law, unless petitioner preferred to resign, and gave him until July 9 to exercise that alternative, absent which the superintendent stated he would formally notify petitioner of his intention

to recommend petitioner's dismissal to the board. Petitioner did not respond.

Thereafter, the superintendent gave petitioner a formal notice of intention to recommend dismissal on the grounds of inefficiency, insubordination, neglect of duty and inadequate performance, ORS 342.865(1)(a), (c), (d) and (g), relying, generally, on the foregoing facts. The FDAB, after finding the facts set forth above, which are not disputed, found that the school district was justified in concluding that petitioner was guilty of insubordination and neglect of duty, but not of the other grounds stated in the formal notice. One member of the FDAB panel dissented on the ground that, although the charges of neglect of duty and insubordination were substantiated, dismissal was not warranted by those facts.

The function of the FDAB on appeal is limited. It is the primary fact finder, but it may not substitute its judgment for that of the school board; if the facts relied on by the school board and found to be true, together with any additional facts developed at the hearing, are adequate to satisfy the statutory grounds on which the school board relied, FDAB may not reverse the dismissal, "* * * unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy. * * *" ORS 342.905(5);[3] *Ross v. Springfield School Dist. No. 19*, 56 Or App 197, 641 P2d 600 (1982).

---

[3] ORS 342.905(5) provides:

"(5) When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written report and send it to the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in subsection (1) of ORS 342.865, are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. The panel shall not reverse the dismissal if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings

Here, the FDAB found that the facts relied upon by the school board were true and substantiated; petitioner does not contend otherwise. Instead, he assigns as errors of law the following: (1) the FDAB's reliance on the letter of June 24, 1980; (2) its reliance on the May 20 telegram, and (3) a claim that the penalty was excessive.

■ In support of the first assignment, petitioner contends that the FDAB could not consider the letter of June 24, 1980, because it was not included in the statement of charges against petitioner. He is correct in asserting that the letter was not relied on by the respondent, but wrong in contending that it may not be considered for that reason. ORS 342.905(5) expressly provides that:

> "* * * The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances *and additional facts developed at the hearing* that are relevant to the statutory standards in subsection (1) of ORS 342.865, are adequate to justify the statutory grounds cited. * * *" (Emphasis supplied.)

It is true that the letter in question was written after it was too late for petitioner to indicate his intention to return to his teaching job and, therefore, it is not relevant to a determination as to whether petitioner refused to respond to the school board's directive to let the board know if he was going to return to his job. However, the FDAB's order, taken as a whole, indicates that it treated petitioner's failure to respond to the June 24 letter as simply another instance in which he remained incommunicado. The basic conclusion of the FDAB is that petitioner was clearly on notice that the superintendent was requesting that petitioner indicate whether he intended to return to his

---

and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy. The panel shall prepare the report within 30 days from the final adjournment of the hearing. However, when the panel finds that because of unusual circumstances justice requires that a greater time be spent, it shall so notify the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The extension shall not be beyond 30 days from the date of the notice of extension."

teaching position so that respondent could complete its staffing needs for the following year, and that petitioner persisted in refusing to let him know. He simply remained silent; his failure to respond to the June 24 letter is but another example. We do not read the order as relying on petitioner's failure to respond to that letter as material to its decision and see no reason to remand for reconsideration without considering petitioner's failure to respond to that letter. A reasonable inference to be drawn from the facts is that petitioner decided to take the additional leave he had requested, whether or not respondent approved his request, and that by not so advising respondent he stood a chance of receiving back pay if respondent attempted to terminate his employment.

■ Petitioner's second contention, that the FDAB erred by relying on the May 20 telegram, is based on the proposition that the alleged acts of insubordination occurred while petitioner was on an authorized leave of absence, during which he was not under respondent's control until June 30, 1980. Accordingly, the argument goes, respondent was not entitled to direct petitioner to do anything prior to the termination of his leave. Implicit in this argument is that it is up to the court to define the term "insubordination."[4] Again, we think petitioner misconceives the function of both the FDAB and this court. As we pointed out in *Ross v. Springfield School Dist. No. 19, supra:*

"* * * ORS 342.895 vests in the district school board the authority to dismiss a permanent teacher on the grounds set forth in ORS 342.865. In leaving the grounds for dismissal undefined, the legislature must have intended that the standards be applied at the local level based upon local standards. What may be 'inadequate performance,' ORS 342.865(1)(g), in one school district may be adequate in another. So, too, 'immorality' and 'gross unfitness' [footnote omitted]: what is acceptable in one district may not be in another.

"That delegative authority does not, however, leave the local board with unfettered discretion. FDAB review protects the teacher against arbitrary action, even though its

---

[4] Petitioner relies on a concurring opinion in *N. Clackamas Sch. Dist. v. Fair Dis. App. Bd.,* 30 Or App 855, 567 P2d 1091 (1977), in which the author defines the term "insubordination."

authority is limited to determining whether the facts relied upon by the local school board are 'true and substantiated,' and, if so, whether such facts justify the conclusion reached by the school board. In other words, the FDAB determines whether the local school board could reasonably conclude that those facts constituted immorality or gross unfitness. It is not the function of the FDAB to decide whether it would have reached the same conclusion based upon that evidence. * * *" 56 Or App at 204-05.

Here, the FDAB found that the facts relied on to support the recommendation to dismiss petitioner were true and were sufficient to support the statutory grounds for dismissal: insubordination and neglect of duty. The findings of fact made by the FDAB are unchallenged and are supported by substantial evidence; we cannot say that FDAB erred as a matter of law in concluding[5] that respondent could reasonably conclude that those facts supported the grounds for dismissal of insubordination and neglect of duty even though petitioner was on a leave of absence at the time. We cannot say as a matter of law that it is impermissible for a school district, at the time it is working out its staffing needs,[6] to insist that a teacher on leave of absence advise the superintendent whether he intends to return to his job at the end of that leave. Neither can we say as a matter of law that a local school board may not reasonably consider the teacher's refusal to respond as insubordination or neglect of duty.

Petitioner argues, but does not assign as error, that because respondent's normal procedure was to send permanent teachers written contracts for the following year, and to give them 14 days to respond, its action in this case was arbitrary. He relies on ORS 342.905(5), which provides in part that the FDAB

"* * * shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies

---

[5] The language used in the FDAB order is: "The conduct of the teacher in the circumstances constitutes insubordination and neglect of duty." As pointed out in the body of the opinion, and in *Ross v. Springfield School Dist. No. 19, supra,* it is not FDAB's function to make that judgment; its function is to determine whether the school board could reasonably reach that conclusion.

[6] Here, the FDAB found that respondent attempts to complete its staffing for the ensuing school year in April.

and standards have been so *inconsistently applied* as to amount to arbitrariness. * * *" (Petitioner's emphasis.)

There is no evidence that respondent has had occasion to deal with, or that it has a policy or rule applicable to, the situation where, as here, the permanent teacher is on a leave of absence. There being no policy or rule, there is no evidence of its application. We cannot say that it was arbitrary as a matter of law to treat a permanent teacher on leave of absence in a manner different from one who is not.

■ Petitioner's third assignment of error is that the penalty of dismissal is excessive. Under ORS 342.905(5), the board may not reverse a dismissal unless its order sets forth with specificity that "the dismissal was unreasonable, arbitrary or clearly an excessive remedy." Petitioner does not contend that dismissal here was arbitrary; rather, he contends that, at most, he was guilty of poor judgment, and that does not merit dismissal. He suggests other things which the respondent could have done before any sanction was imposed, all of which would have given petitioner one additional opportunity to advise respondent whether he intended to return to his teaching job in the fall of 1980. No lesser sanction is suggested.

It is not for the FDAB, or for this court, to determine what is the most appropriate remedy, but only whether it was within the authority of respondent to dismiss petitioner on these facts. Assuming that we have the authority to reverse or modify a sanction which the FDAB has affirmed, we cannot say that the FDAB erred as a matter of law in concluding that the dismissal was not unreasonable, arbitrary or clearly excessive.

The FDAB's order is supported by substantial evidence in the record and is not wrong in substance. ORS 183.484(4).

Affirmed.

**WARREN, J.,** dissenting.

I disagree with FDAB's and the majority's conclusion that the facts FDAB found to be true could constitute insubordination or neglect of duty under the circumstances of this case.

To be sure, as the majority says, a school district may insist that a teacher on leave of absence give early assurance of intent to return and may adopt rules and policies to that effect. Here, however, there was no such policy or rule. It is not disputed that respondent's only policy with respect to permanent teachers was to send such a teacher a written contract of employment and to give the teacher 14 days to decide whether to accept the teaching contract for the next school year. That was not done in this case. Instead, petitioner was given 72 hours to inform respondent of his intention for the 1980-81 school year. It is my opinion that in the absence of a specific policy or practice applicable to permanent teachers on leave, such teachers are entitled to be treated in the same manner as teachers not on leave.

Viewed in the manner I suggest, the treatment accorded petitioner was inconsistent with that accorded permanent teachers and was not pursuant to any rule, policy or practice justifying the difference in treatment.

The majority concludes that, because there is no evidence that respondent has previously had to deal with the situation of a permanent teacher on leave, there is no basis for finding inconsistent application of its procedures and that, therefore, respondent's action toward petitioner was not arbitrary. In the sense that the difference in treatment was not without a reason for different treatment, I agree. But in the sense that respondent treated this teacher differently from others, without a policy or rule to do so, is so inconsistent as to amount to arbitrariness. *See* ORS 342.905(5).

Additionally, I conclude, as a matter of law, that petitioner's conduct was neither insubordinate nor a neglect of duty. The Supreme Court said in *Stephens v. Dept. of State Police,* 271 Or 390, 394, 532 P2d 788 (1975), quoting from *Garvin v. Chambers,* 195 Cal 212, 232 P 696 (1925):

" 'Insubordination can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed.* * *' "

In a specially concurring opinion to this court's decision in *N. Clackamas Sch. Dist. v. Fair Dis. App. Bd.,*

30 Or App 855, 858-59, 567 P2d 1091 (1977), Judge Thornton wrote:

"The term 'insubordination' is not defined in the Fair Dismissal Law or elsewhere in our statutes, so far as I can find. In *Barnes v. Fair Dismissal Appeals Bd.*, 25 Or App 177, 548 P2d 988, Sup Ct *review denied* (1976), although we were not called upon to define the term, we affirmed the order of the Board which in turn had upheld a charge by a school district that the teacher had ' "been insubordinate by continually and repeatedly refusing to adhere to district policy and administrative directives in the use of physical discipline with students * * *." '

"In other jurisdictions 'insubordination' has been defined as including the wilful refusal of a teacher to obey the rules and regulations of his or her employing board of education. [Citation omitted.] It has also been held to imply a general course of defiant, mutinous, disrespectful or contumacious conduct as distinguished from disobedience, which connotes a specific violation of an order or prohibition. [Citation omitted.]

"As I see it, 'insubordination' as used in ORS 342.865(1)(c) means an intentional and wilful refusal to obey, or disobedience of, *an order or directive which a school board is authorized to give and entitled to have obeyed.*" (Emphasis added.)

Petitioner had no *duty* to respond to either of the communications relied upon by the district and FDAB in finding insubordination. Respondent concedes that the May 20 telegram directing petitioner to indicate his intent to accept the contract for the 1980-81 year before noon on May 23 was not one it was entitled to have obeyed. The June 24 letter directed him to resign and stated that if he did not, he would be dismissed. Petitioner had no duty to resign and his failure to do so was, as a matter of law, not insubordination.

I respectfully dissent.