Argued and submitted April 23, affirmed November 21, 1984, reconsideration denied
February 8, petition for review allowed February 26, 1985 (298 Or 773)

# ROSS,
*Petitioner,*
*v.*

# SPRINGFIELD SCHOOL DISTRICT NO. 19,
*Respondent.*

## (FD 80-1; CA A29074)

691 P2d 509

Robert D. Durham, Portland, argued the cause for petitioner. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for Fair Dismissal Appeals Board.

John C. Volmert, Springfield, argued the cause for respondent. With him on the brief was Wurtz, Logan & Logan, Springfield.

James M. Campbell and Goldstein & Campbell, Eugene, filed a brief amicus curiae for Gay and Lesbian Alliance of the University of Oregon and Eugene Chapter of the National Lawyers Guild.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

Gillette, P. J., dissenting.

**YOUNG, J.**

Petitioner is a permanent teacher who was employed by respondent School District for 19 years, most recently as an elementary school librarian. In 1980, respondent dismissed him from his position for inefficiency, gross unfitness and immorality. The Fair Dismissal Appeals Board found the charge of inefficiency unfounded but upheld the dismissal based on gross unfitness and immorality. We affirmed. *Ross v. Springfield School Dist. No. 19,* 56 Or App 197, 641 P2d 600 (1982). The Supreme Court, on review, held that FDAB was bound by a decision of the Teacher Standards and Practices Commission in favor of petitioner on the gross unfitness issue and that FDAB had failed to articulate a rational connection between the facts it found and its conclusion that petitioner's actions were "immoral." It therefore remanded the case to FDAB. *Ross v. Springfield School Dist. No. 19,* 294 Or 357, 657 P2d 188 (1982). On remand, FDAB provided its interpretation of "immorality," as used in the teacher dismissal statutes, and found that plaintiff's conduct was immoral under that standard. It therefore upheld the dismissal. Petitioner then brought the present judicial review proceeding. We affirm.

The facts are in the previous opinions. We discuss them only to the extent necessary. In brief, police officers conducting an undercover investigation of an adult bookstore in Eugene observed petitioner engaging in homosexual activity in an arcade booth in the store. When his activities became known, a number of parents complained to the district's administrators, and the district eventually dismissed him.

ORS 342.865 provides, in part:

"(1)   No permanent teacher shall be dismissed except for:

"* * * * *

"(b)   Immorality * * *."

In *Ross v. Springfield School Dist. No. 19, supra,* 294 Or at 367-69, the Supreme Court held that "immorality" is an "inexact" term under the tripartite analysis of *Springfield Education Assn. v. School Dist,* 290 Or 217, 621 P2d 547 (1980), and that FDAB's role is to interpret the statutory standard. In this instance, FDAB chose to do so by an order in this contested case rather than by rule. In the order, FDAB determined that "immorality" includes "reprehensible sexual

conduct by a teacher." Such conduct "must violate either the moral standards of the school community or the moral standards of the people of the state of Oregon." FDAB found petitioner's conduct to have violated those standards, because he did not keep it private:

> "Privacy is a well known requirement of society for sexual activity. Engaging in sexual intercourse publicly is universally condemned. In this case, appellant's engaging in sexual intercourse in a commercial establishment without a reasonable attempt to assure complete privacy is activity so reprehensible and so universally condemned that appellant was bound to know it would violate, as we conclude that it did, the standard of sexual privacy of both the people of Oregon as a whole and the school community."

In applying an inexact term to specific facts, "the task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 224. In making that determination, the dispositive question on review is whether the agency's action "is within the legislative policy which inheres in the statutory term." 290 Or at 227. The court's role is to review the agency's interpretation of the law to determine whether it is erroneous, not to set forth our own interpretation. ORS 183.482(8)(a). 290 Or at 234. We accept the agency's findings of the "historical facts" if they are supported by substantial evidence, ORS 183.482(8)(c), but we review the application of those facts to the appropriate legal standard as a matter of law. *McPherson v. Employment Division,* 285 Or 541, 547-48, 591 P2d 1381 (1979).

FDAB's interpretation of "immorality" to include "reprehensible sexual conduct by a teacher" is not erroneous, nor is its implicit additional interpretation that engaging in sexual intercourse publicly is reprehensible sexual conduct.[1] The facts of petitioner's conduct are not in dispute; FDAB found most of them either directly in its findings or by

---

[1] This additional interpretation is based on FDAB's determination that such activity is universally condemned and thus violates the state's moral standards. The basis for this determination does not appear in the record, but we do not believe that it needs to do so. Neither FDAB nor this court requires evidence to show that public sexual intercourse violates community moral standards.

implication in its opinion.[2] The real question is whether, as a matter of law, petitioner engaged in sexual intercourse "publicly." We hold that he did.

■ Webster's Third International Dictionary defines "publicly" as "in public; in a manner observable by or a place accessible to the public[.]" Petitioner went to an adult bookstore, which was a place accessible to the adult public. He then entered a movie arcade booth in that bookstore. There was another man in the booth, and the two then engaged in sexual intercourse. The walls of the booth were made of plywood seven feet high, with the first foot from the floor open. There was a door with a bolt lock. A person in an adjoining booth could readily look under the walls and, with some assistance, could look over them. In fact, an officer observed petitioner's actions in this case by standing on the shoulders of another officer and looking over the top of the wall. It would have been possible to see that petitioner had dropped his pants by looking below the wall. In addition, there was a four inch diameter "glory hole" at waist height in a wall connecting the booth to another booth. A person in the other booth could have observed petitioner through the hole.

In short, petitioner went to a public place and engaged in sexual intercourse in a portion which did not provide complete privacy and which he must have known did not provide complete privacy.[3] The booths were places to view movies, not substitute bedrooms. Petitioner was not accidentally observed in a place where he had a right to believe that he was safe from observation; rather, he voluntarily took the risk of being observed in a place where he either knew or should have known that he could not expect complete privacy. We agree with FDAB that petitioner's action so clearly violated the contemporary moral standards of this state that he had full notice that his action was immoral within the meaning of ORS 342.865(1)(b).

■ Once petitioner's activities became known within the school community and among the parents of his pupils, his

---

[2] FDAB did not modify its findings of fact on remand, and we take them from its original order as well as from its revised ultimate findings of fact and conclusions of law.

[3] Petitioner did not testify at the hearing.

ability to function as a teacher was severely impaired or disappeared altogether.[4] That effect was the result of his public immoral behavior, a result he must be deemed to have chosen to risk when he failed to take adequate precautions to be private. Although much of the concern expressed appears to relate to the homosexual nature of petitioner's behavior, rather than to the aspects we find important, the crucial thing is that petitioner did in fact act improperly. The nexus required between petitioner's behavior and his role as a teacher in order to justify his dismissal is provided by the parents' reaction.[5] We do not hold that that reaction was a ground for petitioner's dismissal; his immoral behavior was. However, the reaction is relevant to the school board's determination of whether dismissal was the proper sanction for petitioner's transgression and whether his behavior was related to his work as a teacher which, under the district's policies, is necessary to justify discipline. If petitioner's actions had not met one of the statutory grounds for dismissal, no amount of public opposition to them could override his protected tenure rights.[6] Because they did, FDAB did not err in affirming the district's dismissal.

Affirmed.

**GILLETTE, P. J.,** dissenting.

This case is the stuff of which personal tragedies are made. The majority's opinion recites facts, but does not, in my view, fully appreciate what they mean. My own understanding of the facts and their legal significance satisfies me that I do

---

[4] Petitioner's activity became known as an indirect result of a nuisance abatement suit that the Lane County District Attorney filed against the adult bookstore. Petitioner was subpoenaed as a witness for the state. The details of his actions did not become public, but enough of the general circumstances did so that the parental reaction had a clear factual basis.

[5] The district's contract with its employes provides, in part:

"The personal life of a teacher is not an appropriate concern or attention of the Board. It is recognized, however, that conduct of a teacher outside the school and/or the context of assigned duties may be sufficiently related to the teacher's influence on the students and on the teacher's effectiveness and performance of his or her duties as to remove the conduct from the teacher's 'personal life.' "

[6] The fact that petitioner's sexual activity was homosexual rather than heterosexual plays no role in our analysis. What matters is that he did not assure the privacy which contemporary moral standards require.

not have to participate in the tragedy the majority now completes. I therefore dissent.

For the purpose of this dissent I accept FDAB's interpretation of "immorality" as including public sexual intercourse. What I do not accept is that petitioner's activities were public. The majority ignores a large amount of background information, much of which is in FDAB's findings and conclusions and the rest of which is undisputed in the record. The police observed Ross as part of a general investigation of the adult bookstore, during which they observed a large amount of homosexual activity in the movie arcade area. That area was in a separate room from the rest of the bookstore and was lit by "black lights," while the lighting in the rest of the store was normal. The owners even provided tissue dispensers in the arcade area to aid in sexual activity. The "glory hole," on which FDAB and the majority rely to show that petitioner did not assure complete privacy for his activity, was intended for use—and was in fact used—for oral copulation.

There is nothing to be gained from further details. What is clear from the evidence is that the inside of the arcade booth, and possibly the entire arcade area, was adapted to sexual use. To call this area "public" distorts the meaning of the word. It was a place for private viewing of sexually explicit films and for private sexual activity.[1] The only "public" who might stand on someone's shoulders to look over the top of the booth or get down on hands and knees to look up from the bottom or bend down to look through the "glory hole" consisted of others interested in engaging in similar activities or police officers trying to build a case. The Supreme Court has noted that one reasonably expects privacy in a closed toilet stall. *State v. Holt,* 291 Or 343, 350, 630 P2d 854 (1981). Not only did the arcade booth resemble a toilet stall in appearance, its location and the use to which others commonly put it gave petitioner a far greater basis to expect privacy for his activities

---

[1]According to newspaper stories in the record, the District Attorney did not prosecute petitioner or the others observed in sexual activity in the bookstore for public indecency, ORS 163.465, because he determined that the bookstore was not a public place under the statute. *See State v. Brooks,* 275 Or 171, 550 P2d 440 (1976). Although FDAB is not limited to the relatively narrow meaning of "public" in the statute, I believe that the fact that the legislature has limited criminal culpability in this way is relevant to determining when sexual intercourse is so public that it is immoral.

than he would have had in a public toilet. It surpasses comprehension that the majority can say—as it must, to sustain FDAB's action—that petitioner engaged in sexual activity *publicly.*

It is impossible to avoid the conclusion that petitioner is being punished not for having engaged in sexual activity publicly but for having engaged in homosexual activity that eventually became public. The District acted after pressure from parents and that pressure was based, at best, on only a generalized knowledge of what petitioner had done. No parent observed him at the bookstore, which was in a different city from that where he taught. No one claims that he did anything improper at the school where he worked or during working hours or that he abused his position as a teacher in any fashion. Parents simply did not want someone with homosexual tendencies teaching, and the District accommodated them.[2] Neither FDAB nor the majority of this court is willing—nor am I willing—to say that homosexual activity *per se* is immoral under ORS 342.865(1)(b), yet both FDAB and the majority *are* willing to strain the language of that statute and the the facts in order to justify the dismissal of a teacher whose homosexuality became public and who was hounded out of his job as a result. I cannot participate in this court's placing its *imprimatur* on this destruction of a career. I therefore dissent.

---

[2]The report of an investigator hired by the Teachers Standards and Practices Commission, which is in evidence, notes that, despite the lack of publicity relating petitioner to the nuisance abatement, "knowledge that he has been involved in some homosexual activity is widespread" among students, parents, and District employes. It adds that "[b]ecause such information is widely known, and because the conservative people therein react adversely to such knowledge; the District believes the teacher can no longer be an effective classroom instructor." The letters the District received, and the parents who testified at the hearing, objected to petitioner's "lifestyle," in a context where that word could only mean his homosexual activity. None showed any knowledge of the details of that activity. The report and the letters state the real reason for the dismissal, but it is not one FDAB claims the law permits.