[No. 21346. *En Banc.* December 2, 1930.]

SEATTLE HIGH SCHOOL CHAPTER No. 200 OF THE AMERICAN FEDERATION OF TEACHERS *et al., Appellants,* v. CASPER W. SHARPLES *et al., Respondents.*[1]

[1]Reported in 293 Pac. 994.

*Vanderveer, Bassett & Levinson,* for appellants.

*Peters, Powell, Evans & McLaren, Pennock & Gates,* and *McMicken, Ramsey, Rupp & Schweppe,* for respondents.

MITCHELL, C. J.—This action was brought by the Seattle High School Chapter No. 200 of the American Federation of Teachers and L. A. Morrow, its president, to enjoin the defendants, as directors of Seattle School District No. 1, from enforcing or attempting to enforce a resolution adopted by the board of directors with reference to the future employment of teachers.

The complaint alleges in substance that the defendants are directors of Seattle School District No. 1; that Seattle High School Chapter No. 200 of the American Federation of Teachers is a voluntary association of two hundred fifty persons, all of whom are residents and many of them taxpayers of the city; that all of them are holders of teachers' certificates and qualified and employed as teachers in the public and high schools of the city; and that the plaintiff L. A. Morrow is the president of the association and a resident and taxpayer of the city. It is further alleged that the defendants, at a regular meeting of the board of

directors of the district, arbitrarily and unlawfully adopted the following resolution:

"That no person be employed hereafter, or continued in the employ of the district as a teacher while a member of the American Federation of Teachers, or any local thereof; and that before any election shall be considered binding, such teacher shall sign a declaration to the following effect:

"I hereby declare that I am not a member of the American Federation of Teachers, or any local thereof, and will not become a member during the term of this contract."

It is further alleged that the defendants, as directors of the school district, are about to enter into contracts with teachers for the then ensuing year, and intend to, and will unless restrained, arbitrarily and unlawfully deny employment to all teachers, however otherwise eligible or qualified, who decline to sign such declaration or who are members of the association; and that such threatened action on the part of the board of directors proceeds from the purpose and intent of denying to the teachers employed in the schools their natural, constitutional rights.

The defendants in their answer deny certain allegations of the complaint, but admit the existence of the school district and that the defendants are the directors of it. They further admit that Seattle High School Chapter No. 200 of the American Federation of Labor is a voluntary association of which a number of teachers employed in the high schools of the district are members; that the defendants, acting as the board of directors of the school district, by unanimous vote passed the resolution set out in the complaint; and that the board is about to employ teachers for the public schools of the city for the then ensuing year and intends to, and unless restrained will, require all

teachers to be employed to conform to the requirements of the resolution.

For the purpose of presenting the real question in the case, it would seem that not much, if anything, more than the pleadings were necessary, but at the trial evidence was introduced on the part of the plaintiffs, among other things, that the school board, sitting as a committee of the whole, met and adopted a written report reciting, among other things, that, in the judgment of the board, the aims and methods of the appellant federation of teachers conflicted with the best interests of the schools, and that, after much thought and conference with the educational department, the board had decided not to employ teachers who are members of the American Federation of Teachers, and that:

" . . . we don't know who these members are and are therefore electing the high school teachers subject to their signing a contract which contains the following statement: 'I hereby declare that I am not a member of the American Federation of Teachers, or any local thereof, and will not become a member during the term of this contract'."

Immediately the board adopted the resolution complained of.

At the conclusion of the evidence on the part of the plaintiffs, the trial court, upon motion of the defendants, decided the case against the plaintiffs and entered judgment accordingly, from which judgment the appeal has been taken.

It is entirely clear that the resolution of the board in no way involved or related to any existing contract. There was no attempt to discharge any teacher or to cancel or impair his contract. It was intended to apply only in cases of future contracts.

Counsel on both sides agree that the only ques-

428

tion in the case is whether the rule promulgated and insisted upon by the board is in excess of the powers granted to the board by the legislature. In deciding the question, it must be understood of course that, as the school district is a municipal corporation created by the legislature, it, acting through its board of directors, can exercise only such powers as the legislature has granted in express words, or those necessarily or fairly implied in or incident to powers expressly granted, or those essential to the declared objects and purposes of the municipal corporation. *State ex rel. Winsor v. Mayor & Council of Ballard,* 10 Wash. 4, 38 Pac. 761.

Section 4776, Rem. Comp. Stat., provides that

"Every board of directors, unless otherwise specially provided by law, shall have power and it shall be its duty:

"First: To employ for not more than one year, and for sufficient cause to discharge teachers, and to fix, alter, allow and order paid their salaries and compensation . . .;"

and later on the legislature, in addition to the powers conferred in the above mentioned section, said in § 4805-1, Rem. Comp. Stat., that the board of directors shall have power

"Fourth: To adopt and enforce such rules and regulations as may be deemed essential to the well-being of the schools . . ."

By the first of the above quoted provisions of the statute, power is given to employ and to discharge. The two are expressed in the same sentence, and upon comparison the language employed is significant. As to the one, barring the time limit of one year for the contract, which is not important here, the language used is "to employ;" as to the other, the words are *"for sufficient cause* to discharge." For aught that is

involved in this case, by the terms of the statute, the power to employ is to be exercised at the will and discretion of the board, while the power to discharge depends upon the existence of sufficient cause—the one unqualified, the other qualified.

There is a manifest reason for the difference. The employment of teachers is a matter of treaty or voluntary contract. Both parties must consent and be mutually satisfied and agreed. On the part of each, it is a matter of choice and discretion. However, though qualified, no teacher has the legal right to teach in the schools until the directors willingly enter into a contract for that purpose. Similarly the directors have no legal right to the services of any teacher until the teacher voluntarily enters into a contract for that purpose. Unless limited by statute in some way, the board is entitled to the right of freedom of contract, as much so as the teachers are. On the other hand, the discharge of a teacher affects a legal right. It affects the right of a contract that may not be canceled or impaired at the will or discretion of the board of directors, but only for *sufficient cause*.

The argument is made on behalf of the appellants that, if the judgment in this case is correct, then it must follow that the school board has the power to banish certain enumerated classes of persons from its teaching force. We do not so understand; no teaching force or outstanding contract is involved. The principle announced by the judgment is that the courts will not interfere with the discretion of the board in the future employment of teachers. The exercise of the power to employ does not in any way affect a present teaching force or any part of it, but only the right of contract in creating or establishing a future teaching force. Still further, upon referring to the sections of the code herein set out, appellants say:

"Neither of these two sections assumes to confer authority upon the school board to make rules or regulations for the government of the teachers in matters pertaining to their social or other intercourse with each other, or at all."

However, the question here is not one of regulating the conduct of the teachers, but the power of the board to say whom it will employ as teachers. Regulation of the conduct of teachers by whatever power comes only after the teachers have been employed. Appellants cite *McGilvra v. Seattle School District No. 1,* 113 Wash. 619, 194 Pac. 817, 12 A. L. R. 913. That case held that the district had no authority to render free medical services to pupils by maintaining a clinic for the treatment of school children of parents unable to pay for professional services. It was so held because, upon an examination of the statutes conferring powers upon the school districts, it was said to be apparent that there is not in the statutes "any legislative intent, expressed even inferentially, to confer upon the school district this power." That case affords no light here, where the school board is expressly given power to employ teachers.

 Appellants further contend that the resolution complained of violates Rem. Comp. Stat., § 7611, which is as follows:

"It shall be lawful for working men and women to organize themselves into, or carry on labor unions for the purpose of lessening the hours of labor or increasing the wages or bettering the conditions of the members of such organizations; or carry out their legitimate purposes by any lawful means."

In our opinion that statute has no application here. If, without any resolution of the kind in question, the school district had entered into contracts of employment with appellants and, while those contracts were

being performed, had undertaken to cancel the contracts or discharge the teachers because they organized themselves into or were carrying on Seattle High School Chapter No. 200 of the American Federation of Teachers, then the provisions of that section of the code, or the principle involved, even if there were no statute upon the subject, would be relevant to the inquiry, because the board has no power to discharge the teacher except for sufficient cause. This, however, is not that kind of a case. Here the board is not undertaking to discharge anyone, but only defining its course in exercising its power to employ in the future.

Appellants contend further that the resolution is wholly wrong unless it can be justified as an exercise of the police power, and authorities are cited and an argument made to establish the claim that it is not a valid exercise of the police power. The respondents make no claim that the police power of the state is involved, and we find it unnecessary to place the decision of the case on that ground or to discuss that question.

The principle involved is the same as that in the case of *Jahn v. Seattle,* 120 Wash. 403, 207 Pac. 667, where it was said that:

"The right of the state and its municipalities to say upon what conditions a public work shall be or not be performed is not a right arising from the exercise of the police power, . . ."

but as stated in *Malette v. Spokane,* 77 Wash. 205, 137 Pac. 496, Ann. Cas. 1915D 225, 51 L. R. A. (N. S.) 686, quoted from in the *Jahn* case, the right rests:

". . . upon the simple ground that 'it belongs to the state as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities.' "

See, also, *Atkin v. Kansas,* 191 U. S. 207. But the

argument is made that, if any such right as that involved in the resolution is exercised, it must be by the legislature, and not by the school board. But we have noticed that express power has been given to the board to employ teachers, and we find nothing in the constitution or statutes limiting that right so far as this case is concerned, from which it follows, we think, that the board has full and complete power in that respect.

Quoting Art. 1, § 3, of the state constitution, viz,

"No person shall be deprived of life, liberty, or property without due process of law,"

and also the 14th amendment to the constitution of the United States on the same subject, it is argued on behalf of appellants that thereunder the right of a teacher to follow his chosen profession is too elementary to require any discussion. Granted, but there is no question of that kind in this case. The right of freedom of contract as it exists in this case to refuse for any reason or no reason at all to engage the professional services of any person is in no sense a denial of the constitutional right of that person to follow his chosen profession. For a further consideration of this particular point we refer to the principle of the cases of *Coppage v. State*, 236 U. S. 1, *Duffy v. Cooke*, 239 Pa. St. 427, 86 Atl. 1076, *San Antonio Fire Fighters' Local Union No. 84 v. Bell*, 223 S. W. (Tex. Civ. App.) 506.

Nor can the courts be successfully invited into a consideration of the policy of the resolution, for that would lead to supervisory control of judgment and discretion in the selection and employment of teachers which the statute has given exclusively to the board of directors.

Counsel on both sides have referred to a number of cases that in one way or another discuss the question

here, but we find it unnecessary, in addition to what we have said, and in addition to the cases already cited, to further extend this opinion, other than to refer to two cases which appear to be very much in point, the reasoning and conclusions of which we think applicable to this case. Those cases are *Frederick v. Owens,* 35 Ohio Cir. Ct. Rep. 538, and *People ex rel. Fursman v. City of Chicago,* 278 Ill. 318, 116 N. E. 158.

The first of the cases above referred to arose in Cleveland, Ohio. Some of the teachers in the public schools formed an organization known as the Grade Teachers' Club, the aims, purposes and plans of which it appears were similar to those of the appellants in the present case. The board of education of Cleveland determined that the plan adopted by the teachers' club would, if carried out, be detrimental, instead of beneficial, to the schools, and passed a resolution disapproving of the action of the club and calling upon the members who desired to remain as teachers to abandon it. The resolution further provided that all future contracts or appointments to teach should contain a stipulation that the teacher had abandoned the plan. An action was brought to prevent the board of education from carrying the resolution into effect. The case reached the circuit court of appeals, and, in holding that an injunction would not lie, that court, among other things, said:

"By the law of Ohio it was the duty of Frederick, the superintendent of schools, to appoint the teachers subject to approval by the board of education. The law prescribes the qualifications of teachers and provides that teachers already in the schools shall be given preference in the matter of appointment as against persons who have not been appointed to teach. Aside from these conditions imposed, the statute makes no attempt to control or regulate the discretion of the superintendent and of the board of education in the

selection of teachers, the whole subject being committed to their sound discretion.

"We have nothing to do in this case with the question of the dismissal of teachers during the term of their employment as none were dismissed. Neither the superintendent nor any of his assistants nor any of the teachers have any vested right in the positions that they hold. The right to longer occupy those positions terminates at the end of the period for which the appointment has been made, and thereafter the right to continue therein depends upon the judgment of the superintendent and the board in so far as assistants and teachers are concerned, and of the board alone in so far as the superintendent is concerned. It was necessary that this power of selection—appointment and reappointment—should be vested somewhere, and the legislature saw fit to vest it in the superintendent and in the board of education. The statutes will be searched in vain to find any provision to the effect that the superintendent and the board may only make selections and appointments when they are able to give reasons therefor that are satisfactory to the courts, and the record in this case will be searched in vain for evidence tending to show that any teacher has been appointed who was not qualified to fill the position to which she was appointed. It might well be contended that the superintendent and the board of education were abusing the discretion reposed in them by the legislature in the selection of teachers if it were shown to be true that they had intentionally and wilfully selected incompetent teachers when competent teachers were available. No such question is presented here. The question here is—there being no showing that any teacher appointed is incompetent to perform the duties of the position, can the superintendent and the board of education be held to have abused their discretion in making selections, because they selected the ones they did instead of others who might have been chosen? It being true that neither the superintendent nor the board is required by law to state the reasons to any one for the selections made, can the court enumerate certain reasons as insufficient and then command the superintendent and the board of education not to omit

to appoint for those stated reasons, and then punish them for contempt if they do so?''

Then, upon referring to the cases of *Coppage v. State*, 236 U. S. 1, and *Jackson v. Berger*, 92 Ohio St. 130, 110 N. E. 732, the court said:

''We heartily concur in these decisions and we will not attempt any restatement here of the principles so clearly and comprehensively announced by the supreme court of the United States and followed by our own supreme court. These two decisions state the law as applied to the rights of an employer to be precisely the same as it has long been understood to be with respect to employes,—that is to say, that neither may compel the other to continue the relation of employer and employe beyond the term of service agreed upon nor can either compel the other to enter into any new contract for service except by mutual consent of the parties. The law thus stated as applicable to individuals, partnerships, corporations and other associations of individuals handling their own money, should surely apply with equal force to public officials who are not spending their own money, but who are trustees of a public fund raised by taxation, and whose duty it is to make these expenditures according to their best judgment for the common benefit of all. Individuals may be very liberal, if they so elect, with their own money. Public servants may not have the funds in hand with which to do as they would like in the matter of increasing the salaries of persons employed by them. They act, as is well known, under many limitations, including, often, an insufficient tax levy.

''It is difficult to conceive of anything that would be more certainly productive of confusion in practical application than the proposition that the courts may state to public officers the various grounds upon which they shall not determine against appointing an applicant for a position under the control of such officers. This doctrine extended to its logical result necessarily takes from the public officer very much of the authority given him by law to make the selections in question, and to that extent, and without the slightest warrant

of law, passes this power over to the courts. We are very clearly of opinion that nothing exists in the statutes giving the courts any such power."

Shortly after the Cleveland case was decided, a similar one arose in Chicago on account of an organization known as Chicago Teachers' Federation, and a resolution or rule of the board of education of that city to the effect that no person should thereafter be employed in the education department unless he or she state in writing that he or she is not a member of and will not, while employed in the education department, become a member of such teachers' organization. The supreme court of Illinois, in holding that injunction would not lie to prevent the education department from enforcing the rule against teachers who were members of the federation, and upon stating that:

". . . the sole question to be determined was whether the board of education had the right in selecting teachers to discriminate between those who are members of a federation or union and those who are not such members, and whether its action in this regard violates any constitutional or statutory provision,"

said:

"As counsel for appellee state, this is a question of first impression in this state. While a large number of authorities have been cited on both sides, none of them are in point or helpful in determining the question at issue. Elaborate arguments have been presented on both sides, but the question, after all, is a simple one and presents no great difficulties. By the statute the board of education in cities having a population of 100,000 or more is given complete control of the schools of the city. Among its powers is that of employing teachers and fixing the amount of their compensation. It is empowered to enact such ordinances as may be deemed necessary and expedient for the proper management of the schools. The board consists of twenty-one members, appointed by the mayor

of the city. The tenure of office is three years, the terms of office of seven of the members expiring each year. A new board is thus brought into existence each year. The board has no power to make contracts for the employment of teachers to extend beyond the ensuing school year. (*Stevenson v. School Directors,* 87 Ill. 255; *Davis v. School Directors,* 92 *id.* 293.) A new contract must be made each year with such teachers as it desires to retain in its employ. No person has a right to demand that he or she shall be employed as a teacher. The board has the absolute right to decline to employ or to re-employ any applicant for any reason whatever or for no reason at all. The board is responsible for its action only to the people of the city, from whom, through the mayor, the members have received their appointments. It is no infringement upon the constitutional rights of anyone for the board to decline to employ him as a teacher in the schools, and it is immaterial whether the reason for the refusal to employ him is because the applicant is married or unmarried, is of fair complexion or dark, is or is not a member of a trades union, or whether no reason is given for such refusal. The board is not bound to give any reason for its action. It is free to contract with whomsoever it chooses. Neither the constitution nor the statute places any restriction upon this right of the board to contract, and no one has any grievance which the courts will recognize simply because the board of education refuses to contract with him or her. Questions of policy are solely for determination of the board, and when they have once been determined by it the courts will not inquire into their propriety.

"The existence of a teachers' pension fund in the city of Chicago does not restrict the board of education in its right to select such persons as teachers as it may desire to employ, nor does it confer upon one who has been a contributor to such fund any right to demand that he or she be re-employed. The only right upon which a contributor to the fund can insist in case the board concludes that it will not re-employ him or her, is the right to receive at once the money he or she may have contributed to the fund. (Hurd's Stat. 1916, chap. 122, § 161.)

"In enacting this ordinance or rule the board of education did not interfere with the rights of any citizen of the city of Chicago, and it has the right to enforce the rule." *People ex rel. Fursman v. City of Chicago,* 278 Ill. 318, 116 N. E. 158.

The judgment appealed from is affirmed.

Fullerton, Parker, Tolman, Millard, Beeler, and Main, JJ., concur.

Holcomb, J., concurs in the result.

Beals, J. (dissenting)—The question presented by this appeal turns upon the power conferred by law upon the respondents as directors of Seattle School District No. 1. Respondents, as such directors, are public officers, and teachers entering into contracts with respondents become employees of the public. Courts should be extremely loath to interfere with school directors in the exercise of their administrative functions and in determining questions involving the welfare, discipline, policy and control of the schools under their jurisdiction. I am in entire accord with the majority of this court in believing that, in the matter of entering into contracts with teachers for services to be rendered, both the school directors and the teachers are free agents and are at liberty to enter into such contracts or not, as they may desire.

It seems to me, however, that the question here presented goes farther than this. Respondents, as a prerequisite to signing a contract with a prospective high school teacher, voted to require the teacher to sign the following declaration:

"I hereby declare that I am not a member of the American Federation of Teachers, or any local thereof, and will not become a member during the term of this contract."

It must be assumed that, in requiring this declara-

tion, respondents meant exactly what the declaration imports, to wit, that, if the declarant falsely stated that he was not a member of the American Federation of Teachers, or a local thereof, when, as matter of fact, he was a member of that organization, or if, after signing the declaration and accepting a contract from respondents, the teacher, during the term of the contract, should become a member of the federation, such an untruthful statement or change of status, as the case might be, would constitute, under the law, sufficient cause for the discharge of the teacher, during the contract term. If the declaration will not bear this construction, it seems to me it is to a great extent meaningless, and is merely a scarecrow, shaking a fist of straw, a fit subject for scorn and ridicule. Taking the declaration at its face value, I think it should be here determined whether or not a violation thereof would constitute, under the law, ground for the abrogation of a teacher's contract, of which the declaration is a part.

I cannot escape from the conclusion that, if respondents have, under the law, authority to insist upon the signing of the foregoing declaration as a prerequisite to entering into contracts with teachers, another board of school directors would have the right to insist upon a declaration that each prospective teacher *is* a member of the American Federation of Teachers, or will join the same and maintain membership therein during the contract period. This question is, therefore, one of great importance.

Granting, as I do, that school directors have the widest discretion in determining the persons with whom they shall contract as teachers for their respective districts, I am also of the opinion that, if such a board does undertake to lay down in advance any rule which will form at least a partial basis to be taken into

consideration in the making of each teacher's contract, such a rule must be in accord with law, and should form a legal basis for abrogating the contract of employment if it later appear that the rule has been violated.

Questions very similar to those here presented were considered by the supreme court of Illinois in the case of *People ex rel. Fursman v. Illinois,* 278 Ill. 318, 116 N. E. 158, the opinion in which case is relied upon by the majority. It is significant, however, that the Illinois court, in the course of its opinion, stated that the sole question to be determined was whether the board of education had the right, in selecting teachers, to discriminate between those who are members of a federation or union and those who are not such members. That is a narrower question than is here presented, and seems to have been the only matter determined by the court in the case cited. In my opinion, other questions are here presented and should be determined, upon which questions the opinion of the Illinois court throws little light. The same may be said of other authorities cited in the majority opinion, which simply declare the doctrine, undoubtedly the law, that, in selecting the teachers with whom it will contract, the discretion of school directors should not be reviewed by the courts.

There is a great difference between the exercise of that judgment and discretion which respondents must exercise in individually contracting with teachers and the laying down in advance of a definite rule whereby certain persons are excluded from such employment for reasons having nothing to do with their moral or physical characteristics, their educational qualifications, or their general ability as teachers. It must certainly be admitted that a board of school directors could not resolve that it would employ as a teacher no one who was over six feet or under five feet four

inches in height, or who possessed or failed to possess some other physical characteristic wholly irrevelant to the teaching ability of its possessor. The action of a board in insisting upon the maintenance of any such whimsical standard would certainly be restrained by the courts. Between such supposed ridiculous action on the part of an imaginery school board and resolutions which respondents may properly adopt laying down general rules which they will follow in the employment of their teachers, there exists a wide realm of speculation, into which it is not profitable to wander.

It is not contended that membership in a union, or in any association of persons engaged in the same line of work, is illegal. Section 7611, Rem. Comp. Stat., quoted in the majority opinion, expressly provides that labor unions are lawful. I am not inclined to agree with counsel for respondents in their contention that this section does no more than protect the members of labor unions in their ordinary proceedings from interference on the part of the courts, but it is not necessary in this case to determine the scope of the statute above referred to.

It seems to me clear that, under that statute and the law applicable, it must at least be held that that portion of the resolution here complained of, by which the teacher signing the same agrees not to join the federation during the term of the contract, is *ultra vires* the power of respondents as school directors. It may, of course, be urged that, if *ultra vires*, respondents could not lawfully enforce the same, and that failure to observe this portion of the resolution would constitute no ground for the discharge of a teacher. Whether this be true or not, I am not disposed to hold that qualified and capable teachers, as a condition precedent to employment, may be required to sign such a stipulation which it is beyond the power of the school directors to

442

enforce by discharge, if violated by the teacher. The principle underlying the question is, it seems to me, of very great importance.

After careful consideration of the questions here presented, I am of the opinion that, in adopting the resolution hereinabove set forth, respondents exceeded their lawful authority, and, whatever may be said as to their power to carry into actual practice the principle laid down by them in the resolution here complained of, respondents' action as taken should be restrained by the courts, and the judgment appealed from, which upheld a resolution at least in part without support in law, should be reversed. I accordingly dissent from the conclusion reached by the majority.

