[No. 6554–1–II. Division Two. August 6, 1985.]

CHARLES L. SIMMONS, *Appellant*, v. VANCOUVER
SCHOOL DISTRICT NO. 37, *Respondent*.

*Gilbert H. Kleweno, Boettcher, LaLonde, Kleweno, Gladley, Witteman & Schreiber,* and *Catherine O'Toole,* for appellant.

*Dennis R. Duggan* and *Gallup & Duggan,* for respondent.

REED, A.C.J.—Charles L. Simmons appeals his dismissal from employment as a junior high school teacher with Vancouver School District No. 37. The dismissal was based upon Simmons' insubordination and violation of District regulations pertaining to the corporal punishment of students. We affirm.

According to the hearing officer's unchallenged findings of fact, Charles L. Simmons has been employed by the District as a teacher since the 1975–76 school year. His initial performance reviews generally were favorable. On May 21,

1980, while Simmons was teaching at Lewis Junior High School, he received an evaluation in which he was advised to improve his classroom discipline and to use the "referral system," *i.e.*, to refer students to the administrative office for discipline. Simmons' evaluator also instructed him to be assertive in the classroom, but not to touch a student in anger.

The District transferred Simmons to Jason Lee Junior High School for the 1980–81 school year. During an orientation meeting between faculty and administration, Simmons and other faculty members were told that a school district regulation required that corporal punishment be administered only by administrative personnel.[1]

On December 18, 1980, Simmons with his hand struck a student, one Feyen, on the jaw. The next day, the school's acting principal, Mr. Doenecke, delivered to Simmons a letter which stated in part:

> The purpose of this letter is to officially admonish you for using an inappropriate action to correct a classroom management problem. . . .
>
> It must be clearly understood that in the future no form of physical action that could be labeled forceful is to be used by you as a disciplinary measure. . . .
>
> It is necessary to point out to you that any further acts where you direct physical force against a student will be considered direct insubordination and may result in more serious disciplinary measures as outlined in Vancouver

---

[1]Vancouver School District No. 37 Regulation 5159.5 provides:

"2. Behavioral Problems—actions which may be taken to correct them.
 " . . .

"d. Corporal Punishment. Corporal punishment is discouraged; but, may be used after other actions have failed to establish or maintain proper conduct. No cruel or unusual punishment may be inflicted and no one may administer punishment on or about the head of any child.

 "(1) Teacher [*sic*] may not administer corporal punishment except with the approval of the principal or his/her designee and in his/her presence.

 "(2) Principals or designees should administer corporal punishment and only in the presence of another certificated staff member."

School District Policy 4118. These disciplinary measures may include suspension without pay or separation.[2] During a conference, Doenecke also told Simmons that the striking of Feyen's head violated state law.[3] Doenecke also told Simmons that although classroom discipline by teachers was encouraged, the use of physical force toward a student was not allowed, and that Simmons should have referred Feyen to the administrative office for discipline.

On April 10, 1981, Simmons met with Mr. Hoke, principal of Jason Lee Junior High School. They discussed Hoke's evaluation of Simmons' classroom performance. Hoke recommended that Simmons be more assertive in keeping the students working on their lessons. In an evalu-

---

[2]Vancouver School District No. 37 Policy 4118 provides:
"Separation
"The Board of Directors has the power to dismiss any school employee for conduct unbecoming a school employee after a thorough investigation and recommendation by the superintendent of schools.
"The following are justifiable causes for release or dismissal of school employees:
 "1. Insubordination or violation of the rules and regulations of the Board of Directors.
 "2. Lack of cooperation.
 "3. Inability or incompetence.
 "4. Lack of efficiency in assignment.
 "5. Negligence.
 "6. Improper, immoral, or unprofessional conduct.
 "7. Violation of contract."

[3]WAC 180-40-235 provides:
"Discipline—Conditions and limitations. Discipline may be imposed upon any student for violation of the rules of the school district that have been established pursuant to WAC 180-40-225, subject to the following limitations and conditions and the grievance procedure set forth in WAC 180-40-240:
 ". . .
 "(3) Corporal punishment shall be administered only in an office or some other area outside the view of other students and only by a certificated employee in the presence of and witnessed by another school district employee. Such witness shall be informed beforehand and in the student's presence of the reason(s) for the infliction of corporal punishment.
 "(4) No cruel and unusual form of corporal punishment shall be inflicted upon any student.
 "(5) Only reasonable and moderate force shall be applied to a student and no form of corporal punishment shall be inflicted upon the head of a student."

ation report delivered to Simmons on May 4, 1981, Hoke requested that Simmons take a course in assertive discipline. Simmons declined. That same day, while disciplining a student, one Swihart, Simmons pinched the skin area between Swihart's neck and shoulder, causing a red mark. In a notice of suspension dated May 7, 1981, Simmons was told that the grounds for his suspension were unprofessional conduct, "utilization of excessive, unnecessary and improper physical force upon a student for discipline reasons," and "[a]ssault and battery upon a student that was not legally justified." Simmons expressly waived his right to a hearing and accepted the suspension.

During the last week of September 1981, Simmons struck a student, one Weise, in the chest during a disciplinary incident. The hearing examiner found that the blow was not violent, but that it caught Weise by surprise, causing him to cry. On October 6, 1981, Simmons disciplined one Brown by squeezing the boy's shoulder in a manner similar to that he had employed with Swihart. The hearing officer found that the action involved slight pressure and was not administered in anger. In another disciplinary action on October 7, 1981, Simmons, with the back of his open hand, slapped Brown on the chest, causing him to lose his breath.

On October 13, 1981, the District's superintendent, Mr. Parsley, stated in a letter to Simmons that, based upon Simmons' use of physical contact when disciplining Feyen, Swihart, Weise, and Brown, as well as the nondisciplinary striking of another student, Parsley had determined that there was probable cause to discharge Simmons for unprofessional conduct, insubordination, use upon students of excessive force for disciplinary reasons, and assaults upon students.

On December 9 and 10, 1981, a hearing was held to determine whether there was sufficient cause for Simmons' discharge. The hearing officer found that Simmons was aware of the referral system and that after his suspension from employment, Simmons knew or should have known of "the serious nature of any physical discipline if used in a

classroom setting." He also found that Simmons had been informed that the pinching of Swihart's neck violated school district policy. He stated that none of the disciplinary incidents occurring after the suspension involved excessive force, and that "the incidents taken alone without reference to each other would not have justified Mr. Simmons [sic] termination."

The hearing officer stated in his written opinion that the school administration "was being affected by the conflict over [the] following of school policies regarding school discipline," but that "the school district did not prove by a preponderance of the evidence that Mr. Simmon's [sic] teaching performance was materially and substantially affected by his classroom [disciplinary] conduct." He stated, however, that, when a discharge is based upon insubordination or a violation of a rule, it is not necessary to consider whether the teacher's misconduct affected his teaching efficiency or teaching performance, and held that Simmons' use upon Brown of a disciplinary measure almost identical to that for which he was suspended "was a clear violation of the [District's] regulations and [was] justification for discharge based on violation of the rule or insubordination." Simmons' discharge was affirmed by the Superior Court.

■ Our review is based upon the record of the hearing, not that of the Superior Court. RCW 28A.58.480, .500. *See, e.g., Coupeville Sch. Dist. 204 v. Vivian,* 36 Wn. App. 728, 677 P.2d 192, *review denied,* 101 Wn.2d 1018 (1984); *Potter v. Kalama Sch. Dist. 402,* 31 Wn. App. 838, 644 P.2d 1229 (1982). *Cf. Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982) (review under RCW 34.04-.130(6) is on the record of the administrative tribunal), *cert. denied,* 459 U.S. 1106 (1983). The scope of our review is prescribed by RCW 28A.58.480.[4] *Pryse v. Yakima Sch.*

---

[4] "28A.58.480 Adverse change in contract status of certificated employee, including nonrenewal of contract—Appeal from—Scope. Any appeal to the superior court by an employee shall be heard by the superior court without a jury.

*Dist. 7*, 30 Wn. App. 16, 21, 632 P.2d 60, *review denied*, 96 Wn.2d 1011 (1981); RCW 28A.58.500.[5] The standards of review prescribed by RCW 28A.58.480 are identical to those prescribed by RCW 34.04.130(6), part of Washington's administrative procedure act (APA). Therefore, we construe RCW 28A.58.480 consistently with the APA. *See Pryse,* 30 Wn. App. at 21.

Under RCW 28A.58.480(5), a court reviewing the factual determinations of a hearing officer inquires whether those determinations are "clearly erroneous in view of the entire record as submitted and the public policy contained in [RCW 28A.58.450 and RCW 28A.58.455] . . ." RCW 28A.58.480(5). *See Sellers,* 97 Wn.2d at 324–25; *Pryse,* 30 Wn. App. at 21–23. Issues of law are reviewed de novo, *i.e.,* under the error of law standard, the reviewing court may determine "what the law is." *Sellers,* 97 Wn.2d at 325–26; *Potter,* 31 Wn. App. at 840; *Adams v. Clover Park Sch.*

---

Such appeal shall be heard expeditiously. The superior court's review shall be confined to the verbatim transcript of the hearing and the papers and exhibits admitted into evidence at the hearing, except that in cases of alleged irregularities in procedure not shown in the transcript or exhibits and in cases of alleged abridgment of the employee's constitutional free speech rights, the court may take additional testimony on the alleged procedural irregularities or abridgment of free speech rights. The court shall hear oral argument and receive written briefs offered by the parties.

"The court may affirm the decision of the board or hearing officer or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the employee may have been prejudiced because the decision was:

"(1) In violation of constitutional provisions; or

"(2) In excess of the statutory authority or jurisdiction of the board or hearing officer; or

"(3) Made upon unlawful procedure; or

"(4) Affected by other error of law; or

"(5) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(6) Arbitrary or capricious."

[5]"28A.58.500 Adverse change in contract status of certificated employee, including nonrenewal of contract—Appeal from—To appellate court. Either party to the proceedings in the superior court may appeal the decision to the supreme court or the court of appeals of this state as any other civil action is appealed."

*Dist. 400,* 29 Wn. App. 523, 525, 629 P.2d 1336 (1981). Review of the application of the law to the facts involves a combination of the above two standards of review: a reviewing court makes a de novo determination of the law that is applicable, but gives deference to the hearing officer's factual determinations, reviewing them under the "clearly erroneous" standard. *See Sellers,* 97 Wn.2d at 329–30.

■ Simmons concedes that he engaged in the conduct that the hearing officer determined violated Regulation 5159.5, the District's rule pertaining to corporal punishment of students.[6] He contends that the term "corporal punishment" means only spankings, and therefore that because he did not spank the students, he did not violate any law or District regulation. His only basis for this argument is the following exchange between Doenecke and the hearing officer:

EXAMINER NICHOLS: Basically when you're talking corporeal [*sic*] punishment you're talking about paddling?
THE WITNESS: That's right.
EXAMINER NICHOLS: Is there any other form of corporeal [*sic*] punishment that's being used?
THE WITNESS: No.

Only by a perverse interpretation of Doenecke's testimony can his statements be construed to define "corporal punishment" as Simmons contends. When read in context, Doenecke was stating that "paddling" was the only form of corporal punishment that the District used on students. Corporal punishment plainly means physical, as opposed to pecuniary, punishment. Black's Law Dictionary 306 (5th rev. ed. 1979).

■ Even if Simmons was ignorant of the meaning of the term "corporal punishment," there is no question that in the letters and conferences he was told what conduct was prohibited. He had sufficient notice of what conduct was proscribed, *Stastny v. Board of Trustees,* 32 Wn. App. 239, 253, 647 P.2d 496, *review denied,* 98 Wn.2d 1001 (1982),

---

[6]See footnote 1.

*cert. denied,* 460 U.S. 1071 (1983); *Lithun v. Grand Forks Pub. Sch. Dist. 1,* 307 N.W.2d 545, 551 (N.D. 1981), and yet he continued to engage in that conduct. Whether that conduct violated the District's regulation is a question of law. *See Sellers,* 97 Wn.2d at 330. We agree with the hearing officer that Simmons' physical discipline of students violated the District's regulation.

█ Simmons also has challenged the hearing officer's determination that he was insubordinate. "'Insubordination' has been defined as the willful refusal of a teacher to obey the reasonable rules and regulations of the board of education". *Stastny,* 32 Wn. App. at 247. *See Sims v. Board of Trustees,* 414 So. 2d 431, 435 (Miss. 1982); Annot., *What Constitutes "Insubordination" as Ground. for Dismissal of Public School Teacher,* 78 A.L.R.3d 83, § 3, at 90 (1977). As we have already determined, Simmons' disciplinary measures violated the District's corporal punishment regulation. Whether that conduct was "willful" is an issue of fact, *cf. Adkisson v. Seattle,* 42 Wn.2d 676, 688, 258 P.2d 461 (1953) (mental state of tortfeasor was a question of fact), which is subject to the "clearly erroneous" standard of review. *See Sellers,* 97 Wn.2d at 324.

The hearing officer determined that after the Swihart incident Simmons knew the pinching of a student's shoulder violated a District regulation and that the pinching of Brown's shoulder constituted insubordination. After reviewing the record, we are not "left with the definite and firm conviction that a mistake has been committed." *Sellers,* 97 Wn.2d at 324, quoting *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969). Therefore, we cannot say that the hearing officer's determination that Simmons was insubordinate was "[c]learly erroneous in view of the entire record as submitted and the public policy contained in [RCW 28A.58.450 and RCW 28A.58.455] . . .", as is required by RCW 28A.58.480 for the reversal of the decision. *See Keene v. Creswell Sch. Dist. 40,* 56 Or. App. 801, 643 P.2d 407, 411 (1982) (insubordination may be inferred from teacher's failure to obey the School District's directives).

.

Citing *Hoagland v. Mount Vernon Sch. Dist. 320,* 95 Wn.2d 424, 429–31, 623 P.2d 1156 (1981), Simmons argues that the hearing officer erred by finding that insubordination or a violation of District rules, without proof of an adverse impact upon his "teaching performance," was sufficient cause to dismiss him. Although the *Hoagland* opinion includes language which, to some, may suggest that school districts do not have the authority to discharge a teacher except when the teacher's *classroom* performance is deficient or when his relationships with students have been impaired, we do not read the decision in *Hoagland* that broadly. *Hoagland* only holds that a teacher's conviction of grand larceny, standing alone, generally is not "sufficient cause" for discharge.

As with any other public employee, a teacher has no inherent right to public employment. *Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 222, 643 P.2d 426 (1982), citing *Giles v. Department of Social & Health Servs.,* 90 Wn.2d 457, 461, 583 P.2d 1213 (1978). The discharge of a teacher affects the teacher's legal rights in his employment contract. *Seattle High Sch. Chapter 200 v. Sharples,* 159 Wash. 424, 429, 293 P. 994, 72 A.L.R. 1215 (1930); *State ex rel. Board of Directors v. Preston,* 120 Wash. 569, 571, 208 P. 47 (1922); *Wojt v. Chimacum Sch. Dist. 49,* 9 Wn. App. 857, 860–61, 516 P.2d 1099 (1973). By statute,[7] a teacher's employment contract includes a term by which, during the

---

[7]RCW 28A.58.099(1), the quoted portion of which was formerly codified as RCW 28A.58.100(1), provides:

"Every board of directors, unless otherwise specially provided by law, shall:

"(1) Employ for not more than one year, and for sufficient cause discharge all certificated and noncertificated employees . . ."

RCW 28A.58.450 provides:

"In the event it is determined that there is probable cause or causes for a teacher . . . to be discharged or otherwise adversely affected in his or her contract status, such employee shall be notified in writing of that decision, which notification shall specify the probable cause or causes for such action. . . . Every such employee so notified, at his or her request . . . shall be granted opportunity for a hearing pursuant to RCW 28A.58.455 to determine whether or not there is sufficient cause or causes for his or her discharge or other adverse action against his contract status."

tenure of the contract, a teacher cannot be discharged without "sufficient cause." *Preston*, 120 Wash. at 571.

Although the term "sufficient cause" is not defined by statute, the meaning of that term has been developed by case law. *See generally* 78 C.J.S. *Schools and School Districts* § 202(b)(1) (1952). *See also* Annot., *What Constitutes "Incompetency" or "Inefficiency" as a Ground for Dismissal or Demotion of Public School Teacher*, 4 A.L.R.3d 1090 (1965). A school board may, by regulation or contract, prescribe conduct that will constitute sufficient cause for dismissal. 78 C.J.S. *Schools and School Districts* § 202(b)(1), at 1080 (1952). "The thrust of the inquiry [about the sufficiency of the cause for termination] is 'whether the teacher has so materially breached his promise to teach as to excuse the school district in its promise to employ.'" *Barnes v. Seattle Sch. Dist. 1*, 88 Wn.2d 483, 487, 563 P.2d 199 (1977), quoting *Francisco v. Board of Directors*, 85 Wn.2d 575, 580, 537 P.2d 789 (1975).

 The term "sufficient cause" has been limited by Washington courts in two ways. First, RCW 28A.67.065(1) excludes from the term's ambit a teacher's remediable deficiencies in teaching competence as judged by "district evaluation criteria."[8] *Wojt*, 9 Wn. App. at 861–62. Second, the

---

[8] Former RCW 28A.67.065(1) provides in part:

"The superintendent of public instruction shall . . . establish and may amend from time to time minimum criteria for the evaluation of the professional performance capabilities and development of certificated classroom teachers . . . For classroom teachers the criteria shall be developed in the following categories: Instructional skill; classroom management, professional preparation and scholarship; effort toward improvement when needed; the handling of student discipline and attendant problems; and interest in teaching pupils and knowledge of subject matter. . . .

"Every board of directors shall . . . establish evaluative criteria and procedures for all certificated classroom teachers . . . The evaluative criteria must contain as a minimum the criteria established by the superintendent of public instruction pursuant to this section . . .

"It shall be the responsibility of a principal or his or her designee to evaluate all certificated personnel in his or her school. . . .

"Every employee whose work is judged unsatisfactory based on district evaluation criteria shall be notified in writing of stated specific areas of deficiencies along with a suggested specific and reasonable program for improvement on or

term "sufficient cause" has been limited by decisions in cases involving criminal or otherwise immoral conduct. *See Hoagland* (involving teacher's status as a convicted felon); *Gaylord v. Tacoma Sch. Dist. 10,* 88 Wn.2d 286, 559 P.2d 1340, *cert. denied,* 434 U.S. 879 (1977) (involving teacher's status as a homosexual—and public knowledge of that status). Those cases require that, for the teacher's status or conduct *outside of school* to constitute "sufficient cause" for discharge, that status or conduct must adversely affect the teacher's "effectiveness," "performance," or "efficiency." *Hoagland,* 95 Wn.2d at 428–31; *Gaylord,* 88 Wn.2d at 289–90; *Gaylord v. Tacoma Sch. Dist. 10,* 85 Wn.2d 348, 349, 535 P.2d 804 (1975).

With respect to the first limitation on "sufficient cause," we hold that RCW 28A.67.065(1) does not prevent a school district from discharging a teacher under the circumstances present in this case. Although that statute, which encompasses a teacher's deficiencies as routinely determined by district evaluation criteria, specifically refers to "the handling of student discipline and attendant problems", Simmons was not discharged simply because of his deficiencies in handling student discipline. He was discharged because of his insubordination and repeated violation of the District's regulation pertaining to corporal punishment. The protection provided by RCW 28A.67.065(1) against summary discharge for deficiencies in teaching and classroom-related performance does not prevent a teacher's dismissal for conduct physically abusive to students or otherwise not part of the teacher's work. *See Potter,* 31 Wn. App. at 842; *Wojt,* 9 Wn. App. at 862–64.

---

before February 1st of each year. A probationary period shall be established beginning on or before February 1st and ending no later than May 1st. The purpose of the probationary period is to give the employee opportunity to demonstrate improvements in his or her areas of deficiency. . . . Lack of necessary improvement shall be specifically documented in writing with notification to the probationer and shall constitute grounds for a finding of probable cause under RCW 28A.58.450 or 28A.67.070, as now or hereafter amended."

Administering corporal punishment is not among the duties of the District's teachers; in fact, the District forbade teachers from doing so. Although the force Simmons used in disciplining the students was found not to be so severe as to justify immediate dismissal, Simmons' repeated disobedience of the District's corporal punishment regulation made him unreliable and unpredictable in such matters, and dangerous to the students. "[T]o say that school directors must wait for prior specific overt [acts] before they act to prevent harm . . . is to ask the school directors to take an unacceptable risk in discharging their fiduciary responsibility of managing the affairs of the school district." *Gaylord,* 88 Wn.2d at 299. This is not simply a case involving "classroom deficiencies" or "teaching competence" as contemplated by *Wojt,* 9 Wn. App. at 862–64. *See Potter,* 31 Wn. App. at 842. *But see Mott v. Endicott Sch. Dist. 308,* 39 Wn. App. 792, 695 P.2d 1010 (1985) (labeling the striking of male students in the groin area as a disciplinary measure a "remediable teaching deficiency"). This is a case of a teacher's assaults upon students, repeated despite clear warnings, which fortunately did not result in material injury to the students.

Moreover, assuming arguendo that Simmons' improper disciplinary conduct is a teaching deficiency within the purview of RCW 28A.67.065(1), Simmons has not challenged the hearing examiner's finding and conclusion that the "district followed the disciplinary [sic] steps of admonishment, suspension, and finally termination." The record shows that Simmons repeatedly was given opportunities to correct his improper disciplinary practices. He did not do so. This, coupled with his refusal to attend the assertive discipline class suggested by his evaluator, indicates that Simmons' conduct is not a remediable teaching deficiency, *i.e.,* reasonably correctable. Therefore, RCW 28A.67.065(1) does not prevent the District from discharging Simmons because of his improper conduct. *See Sargent v. Selah Sch.*

*Dist. 119,* 23 Wn. App. 916, 924–25, 599 P.2d 25, *review denied,* 92 Wn.2d 1038 (1979); *Wojt,* 9 Wn. App. at 864.

▮ The second restriction on the definition of the term "sufficient cause," *i.e.,* that the cause relate to teaching "efficiency" or "performance," also does not prevent the District from discharging Simmons. It has been stated that "teaching efficiency" is determined by the teacher's "relationship with his students, their parents, the school administration, and fellow teachers." *Gaylord,* 88 Wn.2d at 289. In *Hoagland,* it was held that when the cause for a teacher's discharge was the conviction of a crime involving moral turpitude outside his profession, the cause was "sufficient" only if the conviction would impair the teacher's "efficiency" and injure the school. *Hoagland,* 95 Wn.2d at 428, citing *Gaylord,* 88 Wn.2d at 286, *Browne v. Gear,* 21 Wash. 147, 57 P. 359 (1899), and *Board of Educ. v. Jack M.,* 19 Cal. 3d 691, 566 P.2d 602, 139 Cal. Rptr. 700 (1977).

In that context, our Supreme Court set forth eight factors which, among others, should be considered when making the factual determination whether a teacher's status as a convicted felon made him unfit to teach. But the court set forth those factors as ones to be considered "besides criminal conduct," *i.e.,* in cases when criminal conduct outside of the teacher's profession is alleged to constitute "sufficient cause" for the teacher's dismissal. The eight *Hoagland* factors clearly were not designed to determine in all cases whether there was "sufficient cause" for the teacher's dismissal. "Sufficient cause" relates to the teacher's material breach of his employment agreement with the school district. *See Barnes,* 88 Wn.2d at 487. Although a lack of "fitness to teach" is one proper basis for dismissing a teacher, *see Hoagland,* 95 Wn.2d at 426; 78 C.J.S. *Schools and School Districts* § 202(b)(1), at 1080 (1952), such a lack is not a requirement of "sufficient cause." *See* 78 C.J.S. *Schools and School Districts* § 202(b)(1) (1952). Because the eight *Hoagland* factors are designed to assure that, when a teacher's status or conduct outside his profession is the basis for his dismissal, that cause is related to his per-

formance of his duties as a teacher, *Hoagland,* 95 Wn.2d at 428, those factors are not necessarily applicable when the cause for dismissal is the teacher's improper performance of his duties.

Both Simmons' failure to obey the regulation pertaining to the corporal punishment of students, and his insubordination in continuing, despite repeated warnings, to use physical force against his students, violated the District's Policy 4118.[9] This violation constituted a material breach of his employment contract with the District. We hold that Simmons' insubordination and violation of the District's regulation concerning corporal punishment was "sufficient cause," within the meaning of RCW 28A.58.099(1) and RCW 28A.58.450, for Simmons' discharge. *See Stastny v. Board of Trustees,* 32 Wn. App. 239, 245–48, 647 P.2d 496, *review denied,* 98 Wn.2d 1001 (1982), *cert. denied,* 460 U.S. 1071 (1983). *See also Barnes,* 88 Wn.2d at 487; *Board of Educ. v. Swan,* 41 Cal. 2d 546, 261 P.2d 261 (1953), *cert. denied,* 347 U.S. 937 (1954), *overruled on other grounds in Bekiaris v. Board of Educ.,* 6 Cal. 3d 575, 493 P.2d 480, 100 Cal. Rptr. 16 (1972); *Mavis v. Board of Educ.,* 563 S.W.2d 738, 739 (Ky. Ct. App. 1977); *Bott v. Board of Educ.,* 41 N.Y.2d 265, 360 N.E.2d 952, 392 N.Y.S.2d 274 (1977); *Lithun v. Grand Forks Pub. Sch. Dist. 1,* 307 N.W.2d 545 (N.D. 1981); 78 C.J.S. *Schools and School Districts* § 202(b)(1), at 1081 (1952); 56 C.J.S. *Master and Servant* § 42(c), (h) (1948).

█ Simmons also argues that the charge of "insubordination" in the District's letter of probable cause was too vague to give him adequate notice of the charge against him and that the letter did not allege a violation of District Policy 4118. The letter clearly states the factual bases for the District's allegation that Simmons was insubordinate. This description gave Simmons adequate notice of the basis for the charge against him. *See Martin v. Dayton Sch. Dist. 2,* 85 Wn.2d 411, 412, 536 P.2d 169 (1975), *cert. denied,* 424

---

[9]See footnote 2.

U.S. 912 (1976); RCW 28A.58.450. When describing the Swihart incident and Simmons' subsequent suspension, the letter of probable cause specifically referred Simmons to the letter of suspension dated May 7, 1981. In that letter, Superintendent Parsley discussed Simmons' misconduct that led to the suspension, including Simmons' disregard of the written admonition that informed him his disciplinary practices violated District Policy 4118 and would not be tolerated. This notice was more than adequate to apprise Simmons that his repeated violation of the District's corporal punishment policy was the basis for the action against him. *Martin*; RCW 28A.58.450.

Finally, Simmons argues that the hearing officer could have prescribed a sanction less severe than a discharge. However, determination of the sanction to be imposed is within the province of the District; review of the District's action, both by the hearing officer and by the superior and appellate courts, is limited to a determination of whether there was cause to impose a sanction. *See Clark v. Central Kitsap Sch. Dist. 401*, 38 Wn. App. 560, 686 P.2d 514, *review denied*, 103 Wn.2d 1006 (1984); RCW 28A.58-.450, .480.

Affirmed.

PETRICH and ALEXANDER, JJ., concur.

Review denied by Supreme Court October 4, 1985.