[No. 11885-1-III.   Division Three.   April 15, 1993.]

JAMES McCORKLE, *Appellant,* v. SUNNYSIDE SCHOOL DISTRICT NO. 201, *Respondent.*

*Jacob R. Rufer,* for appellant.

*Lonny R. Suko, Kevin D. Kilpatrick,* and *Lyon, Beaulaurier, Weigand, Suko & Gustafson,* for respondent.

THOMPSON, J. — James M. McCorkle appeals a superior court judgment which affirmed a hearing officer's determination that sufficient cause existed for Sunnyside School District to discharge him from his teaching position. He contends the hearing officer should not have considered prior complaints against him because they were not the subject of formal disciplinary proceedings. We affirm.

Sunnyside School District had employed James McCorkle as a physical education teacher since 1980. On the morning of March 26, 1990, Mr. McCorkle was on bus duty on the school grounds of Chief Kamiakin Elementary School. He saw 10-year-old A.B. walking across the grounds with two

older girls. A.B. was in his class at Chief Kamiakin. She had been in his grocery store the previous day and he suspected her of shoplifting.

Mr. McCorkle approached the three girls and asked A.B. her name, stating he had been told by another child that she had taken something without paying for it when she was in his store. A.B. gave him her name. She then started to walk away with her two companions, who were headed for their classes in the intermediate school. Mr. McCorkle caught up with A.B., grabbed her by the shoulder, and told her she must turn back toward her school. She told him she could get there herself and pulled away. Her coat came off in Mr. McCorkle's hands. He then put both of his hands on her shoulders and attempted to force her to come with him. A.B. struggled and started to cry. She got away from Mr. McCorkle and went into the school office to report the incident. Pictures taken the day of the incident show dark bruises on her upper arms.

Principal Stanley Davis testified A.B. was crying hysterically when she entered his office. He asked Mr. McCorkle what had occurred. Mr. Davis reminded Mr. McCorkle he previously told him he must keep his store business separate from his teaching duties. A meeting was scheduled with Mr. McCorkle for the next day. At the meeting, Mr. McCorkle admitted grabbing A.B.'s coat because he believed she had shoplifted. Mr. Davis testified Mr. McCorkle also admitted he had been warned about mixing his private and school business, but said: "[Y]ou know me, . . . I know the rules, but sometimes I cross the line."

On March 29, 1990, Superintendent Jack Middleton notified Mr. McCorkle in writing of his "determination that probable cause exists to immediately discharge you from your employment with the district". He gave the following reasons in support of his decision:

   (1) The non consensual touching, grabbing and/or holding of a ten year old female student without justification or cause;
   (2) Assaultive behavior towards a ten year old female student;

(3) Improper discipline;

(4) Failure to conform your conduct to accord with the reasonable expectations of the district as earlier communicated to you;

(5) Improper use of your position of authority for personal reasons unassociated with your duties as a teacher in the Sunnyside School District;

(6) Violation of one or more of the ethical and legal obligations imposed upon you in dealing with a student in the Sunnyside School District;

(7) Unprofessional conduct.

Mr. McCorkle requested a hearing as provided by RCW 28A.405.310. Before the December 1990 hearing, he moved in limine to exclude

[e]vidence and testimony concerning all matters brought to the attention of the Sunnyside School District at the time of their occurrence, that were investigated by the Sunnyside School District, and resulted in no discipline to Mr. McCorkle.

The motion cited provisions of the collective bargaining agreement entered into by the school district and the teachers association. The agreement stated:

No teacher shall be disciplined without just and sufficient cause. Such discipline shall be in private. In addition, the District agrees to follow, when appropriate, a policy of progressive discipline which may begin with a verbal warning, progress to a written reprimand, then to suspension with loss of pay and when required by the circumstances, include discharge or non-renewal.

. . . .

Teachers or former teachers shall upon request have the right to inspect all contents of their complete personnel file kept within the District. All inspections of files shall be by appointment. Upon request, a copy of any documents contained therein shall be afforded the teacher at cost. No secret, alternate or other official personnel file shall be kept anywhere in the District. A separate file for processed grievances, if any, shall be kept apart from the teacher's personnel file.

. . . .

Any derogatory material not shown to a teacher within a reasonable time after receipt or composition shall not be allowed as evidence in any grievance or in any disciplinary action against such teacher.

No evaluation, correspondence or other material making derogatory reference to a teacher's competence, character, or

manner shall be kept or placed in the personnel file without the teacher's knowledge and exclusive right to attach his/her own written comments.

All information forming the basis for any reprimand, warning, discipline, or adverse effect shall be limited to matters and events occurring during the previous three years. Such material three (3) years old or older shall be expunged from the file at the teacher's written request.

The hearing officer ruled he would hear testimony about prior conduct not the subject of formal discipline and reserve ruling on its admissibility until the end of the hearing.

Mr. Davis then testified about several prior complaints against Mr. McCorkle. One or two months before the incident with A.B., Mr. McCorkle asked one of his students during class to tell her mother to come by his store. The mother became angry and complained to Mr. Davis, because the reason Mr. McCorkle wished to see her was to ask her about an outstanding bill she owed him. Mr. Davis told Mr. McCorkle to keep his store business and his teaching separate.

In February 1989, Superintendent Middleton asked Mr. Davis to meet with Mr. McCorkle to discuss several complaints from parents. The complaints concerned name calling, refusing to excuse students from physical education class, and imposing physical discipline. One of the incidents discussed occurred in May 1987. It involved a student whom Mr. McCorkle had ordered to do push-ups as a punishment for disrupting his class. When she refused, he grabbed her and pushed her down on the floor. Mr. Davis told Mr. McCorkle he had to stop short of touching students when he was disciplining them.

In December 1987, Mr. Davis wrote Mr. McCorkle a letter in which he advised that the use of physical exercise as punishment was prohibited. Mr. McCorkle met with him and stated his displeasure at having received the letter, and Mr. Davis indicated to him the directive contained in the letter "stood". On February 4, 1988, Mr. Davis sent a memo to all school staff giving them the same directive and reminding them not to use any physical force with students.

Also in February 1988, Mr. McCorkle physically restrained a high school student who attempted to cut through a P.E. class on his way back to the high school after lunch in the elementary school cafeteria. The student's coat was ripped during the encounter. The incident occurred *after* the February 4 memo had been circulated. This time, Superintendent Middleton met with Mr. McCorkle. He told him that he was not to place his hands on a student, and Mr. McCorkle agreed. Superintendent Middleton told him that if such conduct continued, he would be relieved of his duties.

Superintendent Middleton also testified he attended a school board meeting in February 1989 during which numerous complaints about Mr. McCorkle were aired, including complaints concerning his use of physical discipline. At a subsequent, private meeting with Mr. McCorkle, Superintendent Middleton advised him never "to place his hands on a student in any manner at any time other than while he was demonstrating a skill in the physical education class". On cross examination, both Mr. Davis and Superintendent Middleton agreed they did not initiate formal disciplinary procedures against Mr. McCorkle in connection with these prior incidents.

Two other incidents involving Mr. McCorkle were brought to the attention of the hearing officer. Helen Elze, who works in the principal's office, testified that on one occasion Mr. McCorkle came in with a fifth grade student. Mr. McCorkle had the student's arm pinned behind his back and wanted to see Mr. Davis. Another student testified that on the same day as the incident involving A.B., Mr. McCorkle had pushed him in the chest during P.E. class.

In his memorandum decision, the hearing officer summarized the prior incidents involving Mr. McCorkle and the directives given him by the superintendent and the principal. He found that Mr. McCorkle used physical force against these students, that this conduct violated district policy, and that following two of the incidents, Mr. McCorkle was reminded not to put his hands on students. Based on this history, he

found Mr. McCorkle's conduct was not a remediable teaching deficiency.

The hearing officer rejected Mr. McCorkle's contention that the collective bargaining agreement mandated progressive discipline. He stated:

> I am not convinced that there has been a procedural flaw in the School District's handling of Mr. McCorkle's case. He had full knowledge of the complaints by the School District. The fact that Mr. McCorkle's personnel file does not contain the complaints against him is not fatal to the School District's position.
>
> . . . .
>
> I also find that the absence of a formal complaint regarding Mr. McCorkle's problems does not preclude the School District from pursuing this matter to its conclusion.

The hearing officer concluded:

> 2. That at all times pertinent herein, Mr. McCorkle had knowledge of the School District rule against touching or using physical force in disciplining students.
>
> 3. That Mr. McCorkle repeatedly violated the School District rule against using physical force in his contacts with students.
>
> 4. That Mr. McCorkle's unacceptable and inappropriate conduct in disciplining students was a material breach of his employment agreement with the Sunnyside School District.
>
> 5. That Mr. McCorkle's history of using physical force in disciplining students is not a remediable teaching deficiency.
>
> . . . .
>
> 8. That the School District acted appropriately in discharging Mr. McCorkle without first placing him on probation or ordering his suspension.
>
> 9. That the reasons given by the School District for discharging Mr. McCorkle set forth in Exhibit 7 were legally sufficient.

Mr. McCorkle appealed to the Superior Court. The Superior Court affirmed the hearing officer, concluding:

> 3. The decision of the hearing officer complies with applicable law and should be affirmed.
>
> 4. Appellant displayed an attitude evincing a thoughtless disregard of his employer's efforts for corrective action by repetitive, increasingly frequent, and progressively dangerous actions.
>
> 5. Appellant was not amenable to remedial action for treatment for the specific facts that were determined by the Hearing Officer to have occurred on March 26, 1990.

■ The superior court may reverse the decision of a hearing officer if, *inter alia*, it was made upon unlawful procedure or affected by other error of law. RCW 28A.405.340(3), (4).[1] Under the error of law standard of review, the appellate court reviews the question presented de novo. *Sargent v. Selah Sch. Dist. 119*, 23 Wn. App. 916, 920, 599 P.2d 25, *review denied*, 92 Wn.2d 1038 (1979). Mr. McCorkle contends the hearing officer's consideration of the prior complaints against him constituted an error of law. Specifically, he argues consideration of the prior complaints offended principles of res judicata, violated the collective bargaining agreement, and was inconsistent with teaching evaluations for the years in question which rated his performance favorably.

Two Washington cases have upheld teacher discharges based, in part, upon the aggregate effect of prior misconduct for which the teacher had been reprimanded or suspended. In *Simmons v. Vancouver Sch. Dist. 37*, 41 Wn. App. 365, 377, 704 P.2d 648, *review denied*, 104 Wn.2d 1018 (1985), the teacher was discharged for improper disciplinary conduct. He had previously been admonished and suspended for similar conduct. *Simmons*, at 377. The court held that the conduct was not a remediable teaching deficiency, citing the repeated opportunities the teacher had been given to correct his disciplinary practices. *Simmons*.

Similarly, in *Sargent*, at 921-23, the court stated:

> Although there is a general agreement that Mr. Sargent is a good teacher, academically, the record here confirms a pattern of unacceptable disciplinary practices by Mr. Sargent. In 1972,

---

[1] The other subsections of RCW 28A.405.340 provide for reversal if the decision was:

"(1) In violation of constitutional provisions; or

"(2) In excess of the statutory authority or jurisdiction of the board or hearing officer; or

" . . . .

"(5) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(6) Arbitrary or capricious."

a teacher evaluation report contained a notation by the principal of a reported incident in which Mr. Sargent struck a student with a ruler. In 1973, Mr. Sargent was reprimanded for striking another student with a yardstick and making a humiliating statement to him. Again, in 1975, Mr. Sargent struck a student with a yardstick in disobedience to prior warnings by the District. As a result, Mr. Sargent was placed on probation for the 1975-76 school year. Up until the chair-tipping episode in 1978, Mr. Sargent continued teaching without incident; however, in a 1976 teacher evaluation report, the principal noted concern regarding Mr. Sargent's relationship with his students and the school administration. *Based on these facts, the District*, with the concurrence of the hearing officer and the trial court, *could reasonably conclude that Mr. Sargent's teaching efficiency was adversely affected by his continued disregard for school policy and the practice of disciplinary techniques which threatened the physical and mental well-being of his students.*

(Footnotes omitted. Italics ours.)

■ ■ Mr. McCorkle distinguishes *Simmons* and *Sargent* on the basis they involved consideration of prior conduct for which the teachers were formally disciplined. Because Sunnyside School District resolved the prior complaints against him informally, he argues the district is barred by principles of res judicata from introducing evidence of those complaints in this proceeding. Apparently, Mr. McCorkle believes the district's decisions not to discipline him on the prior occasions are equivalent to findings he had done nothing wrong. The record does not support such a belief. It is clear the district disapproved of his conduct and communicated its disapproval to him. Moreover, res judicata bars a party from relitigating claims which have been brought to a final judgment. *Mellor v. Chamberlin*, 100 Wn.2d 643, 645, 673 P.2d 610 (1983). We know of no authority which would exclude evidence of an employer's dealings with an employee which were not the subject of at least a quasi-judicial determination.

Mr. McCorkle's allegations that the collective bargaining agreement prohibited use of this evidence do not withstand scrutiny. The agreement does not mandate the use of formal disciplinary measures in every instance in which the school

district addresses the conduct of a teacher. Nor does it limit evidence of prior conduct in discharge hearings to conduct which has been the subject of formal procedures. The agreement does prohibit secret or alternate personnel files, but no such file existed here. The principal and the superintendent testified about their prior dealings with Mr. McCorkle. Documents (memos and letters) were introduced in the course of this testimony, but, again, the record does not support a finding these documents came from a secret or alternate personnel file. To the contrary, the evidence was that Mr. McCorkle was fully aware of the complaints and the district's view regarding the use of physical discipline.

Finally, Mr. McCorkle insists he had a right to rely upon the district's annual written evaluations of his teaching, which consistently rated his performance in all areas as at or above the satisfactory level. But if Mr. McCorkle believed his handling of student discipline was acceptable, based upon these evaluations, such belief was unreasonable. His principal and superintendent repeatedly brought discipline matters to his attention and advised him that his conduct was unacceptable and would result in his termination if it continued. The district is not estopped by the written evaluations.

In summary, the challenged evidence was admissible and relevant to the issues of whether Mr. McCorkle knew he must not touch students while disciplining them and whether his conduct was remediable. The hearing officer properly admitted and considered it.

Affirmed.

SHIELDS, C.J., and MUNSON, J., concur.

Review denied at 122 Wn.2d 1012 (1993).